**Donna DOE et al.**

v.

**Nicholas NORTON, Individually, and as Commissioner of Welfare of the State of Connecticut.**

**Civ. No. 15579.**

United States District Court,
D. Connecticut.

Feb. 27, 1973.

Douglas M. Crockett, Raymond J. Kelly, Tolland-Windham Legal Assistance, Rockville, Conn., Robert Beckman, Norwalk-Stamford-Danbury Regional Legal Services, Inc., Stamford, Conn., Elliot Taubman, Legacy, Inc., Norwich, Conn., for plaintiffs.

James M. Higgins, Michael Anthony Arcari, Asst. Attys. Gen., East Hartford, Conn., for defendant.

## RULING ON APPLICATION FOR A PRELIMINARY INJUNCTION

BLUMENFELD, Chief Judge.

The plaintiffs,[1] all allegedly eligible to receive public assistance from the Connecticut State Welfare Department, have initiated this suit to challenge the constitutionality of Conn.Gen.Stats. § 52–440b.[2] This statute is part of a comprehensive statutory scheme whereby the mother of any illegitimate child may be compelled by the appropriate authorities to disclose the name of the child's putative father, and to institute a paternity action. Failure to comply with this statute may result in a fine of not more than $200 and/or imprisonment for not more than one year. The defendant is the Commissioner of Welfare, Nicholas Norton, sued in his individual and representative capacity.

The plaintiffs allege that, as applied to them, this statute violates their constitutional rights to equal protection, due process, and privacy, and is inconsistent with and contravenes the underlying policies of the Social Security Act, 42 U.S.C. § 601 et seq. They rely upon the Civil Rights Act, 42 U.S.C. § 1983, for a cause of action, and upon 28 U.S.C. § 1343(3) for this court's jurisdiction. They seek the convocation of a three-judge district court, 28 U.S.C. § 2281; preliminary injunctive relief, 28 U.S.C. § 2284; certification of the suit as a class action, Fed.R.Civ.P. 23; and declaratory and permanent injunctive relief.

## I.

### Three-Judge District Court

■ Because these plaintiffs seek to restrain the operation of a state statute, this case can only be decided by a district court of three judges, 28 U.S.C. § 2281, unless their claim is insubstantial. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1934). The Supreme Court has recently reiterated the limited power of a district judge to dismiss as insubstantial a claim otherwise appropriate for consideration by three judges:

> "A claim is insubstantial only if 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.'" Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973) (citations omitted).

■ There is little doubt that the constitutional claims herein presented are not "insubstantial."[3] Accordingly, a three-judge district court will be convened to adjudicate the merits of this case.

---

1. Because of the special circumstances of this case, plaintiffs sue under fictitious names. They are all mothers of illegitimate children who sue on their own behalf as well as on behalf of their minor children.

2. Conn.Gen.Stats. § 52–440b provides:

   "(a) If the mother of any child born out of wedlock, or the mother of any child born to any married woman during marriage which child shall be found not to be issue of the marriage terminated by a divorce decree or by decree of any court of competent jurisdiction, fails or refuses to disclose the name of the putative father of such child under oath to the welfare commissioner, if such child is a recipient of public assistance, or to a selectman of a town in which such child resides, if such child is a recipient of general assistance, or otherwise to a guardian or a guardian ad litem of such child, such mother may be cited to appear before any judge of the circuit court and compelled to disclose the name of the putative father under oath and to institute an action to establish the paternity of said child.

   "(b) Any woman who, having been cited to appear before a judge of the circuit court pursuant to subsection (a), fails to appear or fails to disclose or fails to prosecute a paternity action may be found to be in contempt of said court and may be fined not more than two hundred dollars or imprisoned not more than one year or both."

3. Counsel for defendant Norton does not contest the need for a three-judge district court.

The motion to certify the class action aspect of this case will be reserved for the three-judge district court.

## II.

### *Preliminary Relief*

■ It does not follow from the determination that the constitutional questions herein presented are not so "insubstantial" as to foreclose the need for a three-judge district court to resolve them that the plaintiffs have demonstrated that they are entitled to preliminary injunctive relief. The standard which informs the exercise of judicial discretion in the award of preliminary relief focuses on different considerations.

Though the defendant contests the propriety of preliminary injunctive relief in this case, the parties do not dispute the applicable standard which controls the proper resolution of this facet of the dispute. In this circuit, it is settled that:

> "(t)he purpose of a preliminary injunction is to maintain the status quo pending a final determination of the merits. It is an extraordinary remedy, and will not be granted except upon a clear showing of probable success *and* possible irreparable injury. However, 'the burden (of showing probable success) is less where the balance of hardships tips decidedly toward the party requesting the temporary relief.' In such a case, the moving party may obtain a preliminary injunction if he has raised questions going to the merits so serious, substantial, and difficult as to make them a fair ground for litigation and thus for more deliberate investigation." Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2d Cir.),

cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969).

The elements on which the issuance of a temporary injunction depends will be considered separately.

### A. *Probable Success on the Merits*

Since factual issues are minimal, the clear showing which the plaintiffs are required to make is that they will prevail on the issues of law which are presented by this case. In order to determine what they are, it will be helpful to delineate first what is not involved.

Despite the plaintiffs' facile invocation of the constitutional rights to equal protection and due process, it does not appear that the operation of this statute violates those constitutional rights. Their resort to the fifth amendment's protection against self-incrimination would similarly appear to be of no avail. For any action taken under the statute, immunity from criminal prosecution is granted to both the mother and the putative father for *any* act about which either testifies in such proceedings, or for any statement made with respect to paternity prior to such proceedings. Conn. Gen.Stats. §§ 52–435b, 435c.

Nor are the statutory rights of the plaintiffs to welfare benefits jeopardized by the operation of this statute. A three-judge district court in this district has held that the state may not withhold AFDC benefits to an otherwise qualified child, Doe v. Shapiro, 302 F. Supp. 761 (D.Conn.1969), appeal dism., 396 U.S. 488, 90 S.Ct. 641, 24 L.Ed. 677, reh. den., 397 U.S. 970, 90 S.Ct. 991, 25 L.Ed.2d 264 (1970), or to his[4] mother, Doe v. Harder, 310 F.Supp. 302 (D. Conn.), appeal dism., 399 U.S. 902, 90 S.Ct. 2208, 26 L.Ed.2d 556 (1970), because of a mother's refusal to comply with state regulations[5] requiring her to

---

4. For convenience, the masculine gender is used to refer to children of either sex.

5. See Connecticut State Welfare Department Social Service Policies—Public Assistance: Manual Vol. 1, Index No. 3460.22 which presently provides:

> "If the mother is unwilling or unable to name the father, she is still eligible for assistance to meet her own needs, the needs of the child in question and the needs of any other children in the family providing all other eligibility requirements are met; . . . . ."

reveal the name of the child's father or to participate in paternity proceedings against him. That issue is well settled. See cases cited in Saiz v. Hernandez, 340 F.Supp. 165, 166 (D.N.Mex.1972). With these threats to the eligibility of the plaintiffs to receive welfare benefits removed from the case, the only discernable interest which remains, and what the plaintiffs singled out in argument at the hearing as having alleged constitutional significance, is founded on the desire of each mother to keep secret the name of her child's father.

That a constitutional right of personal privacy exists is not contested. Recent cases, e. g., Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), demonstrate that

> "(although) (t)he Constitution does not explicitly mention any right of privacy . . . (there is) a line of decisions . . . (wherein) the Court has recognized that a right of personal privacy, or a guarantee of certain areas or zones of privacy, does exist under the Constitution . . . . These decisions make it clear that only personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty,' are included in this guarantee of personal privacy. They also make it clear that the right has some extension to activities relating to marriage, procreation, contraception, family relationships, and child rearing and education." Roe v. Wade, 410 U.S. 113, 152, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (citations omitted).

What is protected is the individual's personal right to privacy, notwithstanding the fact that by its very nature the exercise of the right may require the participation of another individual. Accordingly in striking down prohibition on the access to the use of contraceptive devices as a denial of equal protection the Court in Eisenstadt v. Baird, 405 U.

S. 438, 453, 92 S.Ct. 1029, 1038, 31 L. Ed.2d 349 (1972), noted:

> "If the right of privacy means anything, it is the right of the *individual*, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." (citation omitted).

Thus, the constitutional question presented is whether at this time a mother's desire to keep the name of the child's father secret is so "fundamental" or "implicit in the concept of ordered liberty" as to require constitutional protection. Roe v. Wade, supra, 410 U.S. at 152, 93 S.Ct. at 726. The contention of each plaintiff mother is that, because her participation in legal action to establish the paternity of her child may result in additional strains in family relationships within the home, or may unwisely force the permanent severance of relationships with his father, her right to decide for herself whether a paternity action should be brought is so "fundamental" as to be included in the constitutional guarantee of personal privacy. This contention calls for further examination.

The rights of a person arising out of a family relationship are necessarily interrelated with those of other members of the family. Whatever interest a mother may have in not disclosing her knowledge of the identity of her child's father is intertwined with, and has a material effect upon, the interests of her child. To discern more accurately the nature of a mother's interest, it will be helpful to distinguish it from those of her child.

Some light is thrown upon the particular interest of the child by the way in which our society considers the plight of a child who has not been acknowledged by his father. Rather than branding it as manifestly evil, a theme which one

---

See also, Welfare Department Memoranda dated April 12, 1972, January 6, 1973, and February 13, 1973, reiterating this policy.

must be prepared to concede is subject to the influences of changing social trends, the child's relationship to his unnamed father has been imbued with a sense of responsibility. The responsibility of a father to support his child, and a cause of action to enforce that responsibility, have existed in Connecticut from its earliest days.[6] In obtaining support for their children, the plaintiffs do not hesitate to disclose publicly to the state and others that their children are illegitimate. At the same time, they argue that the failure to disclose the name of the father brings strength to the family, although that will shield the father against his obligation to support his own child. There is an inconsistency here in keeping two contradictory ideas in play at the same time. The legitimate children in the family unit, if any there are, are not disadvantaged, for they still have their father to look to for support. Whatever unique stigmata of suffering may be carried by a child because he has been denied the same charter that the other children in the family take from birth may not be wholly relieved by disclosure of the name of his father; but if paternity is not established, he is subjected to the additional risk that he will be forever deprived of many rights he is qualified to receive, even though an illegitimate child of his father. Except for special situations, e. g., to ensure noble lineage and the stability of titles, and the prompt and definitive determination of valid distribution of property left by decedents, Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), the trend of the law is to separate the label "illegitimate" from the word "child" to prevent their exclusion from benefits to children. E. g., Weber v. Aetna Cas. & Sur. Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1971) (workmen's compensation benefits); Glona v. American Guarantee &

Liab. Ins. Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968) (wrongful death statute); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) (wrongful death statute); Davis v. Richardson, 342 F.Supp. 588 (D. Conn.) (3-Judge District Court), aff'd, 409 U.S. 1069, 93 S.Ct. 678, 34 L.Ed.2d 659 (1972) (social security death benefits); Ballentine v. De Sylva, 226 F.2d 623 (9th Cir. 1955) (copyright statute); Middleton v. Luchenbach S. S. Co., 70 F.2d 326 (2d Cir.), cert. denied, 293 U. S. 577, 55 S.Ct. 89, 79 L.Ed. 674 (1934) (death on the high seas, "children" includes illegitimates); Turner v. Metropolitan Life Ins. Co., 56 Cal.App.2d 862, 133 P.2d 859 (1943) ("children" in life insurance policy includes illegitimate children). In all of the foregoing cases the interest of the father was only tangential to that of his illegitmate child, for the benefit to the child was not at the expense of his father. But in Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), where the same interest of the father as in these cases was at stake, the Supreme Court held that it was a denial of equal protection for a state to exclude illegitimate children from the obligation of a father to support his children.

Assuming, arguendo, that the enforced disclosure by the plaintiffs of the names of the fathers of their illegitimate children results in an injury which is irreparable, the foregoing analysis of the relative rights of the members of their families persuades me that they have not made a sufficiently clear showing of probable success on the merits as to warrant preliminary injunctive relief under the traditional standard. However, since they have "raised questions going to the merits so serious, substantial, and difficult as to make them a fair ground for litigation . . .," I turn next to consider whether the balance of

---

6. In addition to this responsibility, it is not amiss to note that history and literature are replete with examples of the anguish suffered by illegitimate children denied the satisfaction of knowing their paternity. See, e. g., The Right of Illegitimates Under Federal Statutes, 76 Harv.L.Rev. 337 (1962). Three bastardy actions are reported in the first volume of Connecticut's Reports. See Vol. 1 of Root's Reports 1789–93.

hardships tips so decidedly toward them as nonetheless to warrant the extraordinary relief of a preliminary injunction. Checker Motors Corp. v. Chrysler Corp., *supra*, 405 F.2d at 323.

B. *Balance of Hardships*

In balancing the hardships, it must be remembered that

"(t)he requirement that a party seeking a preliminary injunction demonstrate that it will suffer irreparable harm in the absence of preliminary relief necessitates more than a mere showing that the party seeking relief will see its relative position deteriorate. Preliminary injunctive relief is extraordinary relief. It requires a convincing demonstration that the balance of hardships tips decidedly toward the moving party." Sanders v. Air Line Pilots Assoc. Int'l, 473 F.2d 244 at 248 (2d Cir., 1972) (citations omitted).

Normally the court is called upon to balance the harm which a plaintiff will suffer if an injunction is not granted against the harm that a defendant will sustain if it is. More is involved here. There are special circumstances in this case which make a great difference in considering hardships. As already indicated, the "right of privacy" is invoked by the plaintiff mothers to protect their desire to keep secret the name of their children's father lest its disclosure have some adverse effect upon future relationships within the home. Not every one will agree on what are good amenities and conduct in such a situation. But if the family is to be taken into account, and it must be, hardship to the child cannot be left out of consideration.

As noted above, these children stand to reap significant benefits if paternity is established.

When the effect of the continued denial of the right to substantial benefits accorded to children generally is balanced against the effect which disclosure of

the name of a child's father will have on any future relationships with him, the hardships fall more heavily on the child than on his mother.

Another factor militating against the grant of a preliminary injunction is the presence of a statute of limitations which provides that a paternity suit must be brought within three years from the date of the child's birth.[7] Once the third birthday of a child has passed without action, the name of his father may never be disclosed to him. Even if it is disclosed thereafter, years may go by before there is an opportunity to make a claim to a benefit derived through his father, and the more stale such a claim is the more difficult it will be to prove it. The problems with respect to proof of paternity are formidable in any case.

For the foregoing reasons, the application for a preliminary injunction is denied. However, the court, as soon as it is designated, will expedite a hearing on the merits.

So ordered.

---

7. The plaintiffs suggest that a temporary injunction by this court would effectively toll the state's statute of limitations, but they have not furnished the court with any authority to support that proposition.