Anthony F. **VACCARELLA** and **Jayne Marie Vaccarella**, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

**Jack A. FUSARI, Connecticut Labor Commissioner, et al., Defendants.**

Civ. No. 15343.

United States District Court,
D. Connecticut.

Sept. 13, 1973.

Albert W. Hilburger, Garon Camassar, New London, Conn., for plaintiffs; Elliot Taubman, Norwich, Conn., of counsel.

Robert K. Killian, Atty. Gen., Donald E. Wasik, Asst. Atty. Gen., Employment

Security Division, Labor Dept., Hartford, Conn., for defendants.

Before SMITH, Circuit Judge, and BLUMENFELD and CLARIE, District Judges.

MEMORANDUM OF DECISION FINDINGS OF FACT and CONCLUSIONS OF LAW

BLUMENFELD, District Judge:

This case requires us to consider a constitutional challenge to that portion of Connecticut's unemployment compensation laws which provides for payments to eligible claimants of an additional allowance of $5.00 per week for each of certain dependents of a worker when he is unemployed through no fault of his own.

■ The plaintiff, Anthony F. Vaccarella, has been denied a dependency allowance for his 10-year-old sister who is a member of his household and supported solely by him. The state's denial was based solely on the ground that her relationship to the plaintiff is not one of those for which the statute permits such allowances. He requests a declaration that the statute is invalid in that it is violative of the equal protection clause of the fourteenth amendment because it does not include minor dependent wards among those for whom an allowance shall be paid, and an injunction against the defendants from refusing to pay the allowance to the plaintiff and all persons similarly situated.[1]

The plaintiff relies upon the Civil Rights Act, 42 U.S.C. § 1983, for a cause of action, and upon 28 U.S.C. § 1343(3)

for this court's jurisdiction. A three-judge district court was convened pursuant to 28 U.S.C. §§ 2282, 2284 to hear this constitutional challenge to the state statute.

## I.

### The Statute

The pertinent part of the statute on which the defendants rely for rejecting the plaintiff's claim reads as follows:

"Each individual who is eligible to receive benefits for unemployment with respect to any week shall be paid with respect to such week a dependency allowance of five dollars for such individual's nonworking spouse, . . . living in the same household with such individual and for each of such individual's children or stepchildren who at the beginning of the individual's current benefit year were being wholly or mainly supported by such individual and were under eighteen years of age . . . ." Conn.Gen. Stats. § 31–234.

## II.

### Facts

■ The relevant factual background is undisputed and is largely the subject of a stipulation. The plaintiff, Anthony F. Vaccarella, was laid off from work at Electric Boat Division, General Dynamics Corporation, on or about April 28, 1972, and applied for unemployment compensation benefits shortly thereafter. At the time he was laid off, he was

---

1. No showing has been made that there are any other members of the class, and the defendants assert that the plaintiff's case is unique. In the absence of anything more, we determine that there is an insufficient basis for finding that "the class is so numerous that joinder of all members is impracticable." Rule 23(a)(1) F.R.Civ.P. Application of the principle of stare decisis to the precedent created by the decision in this case sufficiently establishes the right of persons in the situation of the plaintiff to recover on similar claims. See Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 166–167, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); Fleischmann Corp. v. Maier Brewing Co., 386 U.S. 714, 719, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). Furthermore an order that the defendants pay all similar claims which have been rejected in the past, in effect, would be a judgment against the state which is barred by the eleventh amendment. See Rothstein v. Wyman, 467 F.2d 226 (2d Cir. 1972).

the sole support of his sister, Jayne Marie Vaccarella.[2]

When the plaintiff's mother died, she was the guardian of Jayne Marie. Since that time Jayne Marie has been living in the plaintiff's home and has been solely supported by him. She has no estate of her own. Her father had disappeared years before and has not been heard from since. Initially the plaintiff, who is 25 years of age, sought to assume full legal responsibility for his 10-year-old sister by adopting her, but the probate court felt that was most irregular and the proceedings were modified. On August 4, 1972 the New London Probate Court appointed the plaintiff and his wife as guardians of both the person and estate of Jayne Marie.

■ On or about August 11, 1972, the plaintiff applied at the New London unemployment compensation office for the dependency allowance for his ward, Jayne Marie Vaccarella. He was orally denied those benefits by a responsible official of the unemployment compensation office because she was neither the child nor stepchild of the plaintiff, and he was told it would not serve any purpose to apply for such benefits in writing.[3] It is admitted that the plaintiff was entitled to unemployment benefits with allowances for his spouse and his children.

### III.

Whenever legislation operates to grant benefits to some people, but not to others similarly situated, there is a basis for a claim under the equal protection clause. The question to be decided is whether the legislature's failure to pro-vide for an allowance on account of children in the status of Jayne Marie while granting allowances on behalf of other children or stepchildren who are similarly situated within a family and with respect to support is so arbitrary and capricious as to be violative of the equal protection clause.

■ Unemployment compensation is designed to assist those who, although generally employed, are unable through no fault of their own to secure employment.[4] The provision for an additional allowance for certain children clearly relates to social and economic matters. See Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed. 231 (1971); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Aguayo v. Richardson, 473 F.2d 1090, 1108 (2d Cir. 1973). Accordingly, the non-inclusion of an allowance for children in the status of Jayne Marie must be sustained if "it rationally furthers some legitimate, articulated state purpose and therefore does not constitute an invidious discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment." San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16, 33 (1973). See also, Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583, 589 (1973); United States Dept. of Agriculture v. Moreno, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). Unemployment compensation payments are made only while the worker is involuntarily unemployed. The obvious purpose of the statute is to help

2. It is clear that the only individual eligible under the statute is Mr. Vaccarella. His wife's status as a guardian of Jayne Marie does not establish that she is either a necessary or proper party. The action by her is dismissed.

3. An effort to exhaust administrative remedies, if any there are, would be a futile act. *Cf.* Houghton v. Shafer, 392 U.S. 639, 640, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968). This suit is not barred for failure to ex-haust administrative remedies. See Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); Eisen v. Eastman, 421 F.2d 560, 569 (2d Cir. 1969); Russo v. Shapiro, 309 F.Supp. 385, 389 (D.Conn. 1969).

4. Unemployment compensation benefits in Connecticut are paid entirely out of a trust fund created from contributions of in-state employers. Conn.Gen.Stats. §§ 31–261 et seq.

tide a family over the period when its bread winner is unable to earn the wages needed to support it. And the allowance of an additional $5.00 per week for each child in the family is clearly rational, for the larger the family, the more it takes to support it. When attention is paid to the context of the statute, the key words are "dependency allowance . . . for such individual's nonworking spouse . . . living in the same household . . . and for each of such individual's children (under eighteen years of age) . . . being wholly or mainly supported by such individual . . . ."

If the purpose of the statute is to provide a dependency allowance of an additional $5.00 per week for each child living in the same household with an unemployed beneficiary and being wholly or mainly supported by him, then it is difficult to conceive of any rational basis for denial of an allowance for a child living in his household in the situation of Jayne Marie and at the same time the grant of one for any stepchild similarly situated.

▮▮▮ The content of the term "children" in this statute is to be determined by state law. "This is especially true where a statute deals with a familial relationship . . . ." DeSylva v. Ballentine, 351 U.S. 570, 580, 76 S.Ct. 974, 980, 100 L.Ed. 1415 (1956). In that context it is particularly noteworthy that in Connecticut's law there is no jural distinction between the obligation of the plaintiff to support Jayne Marie and that of a stepfather to support his stepchildren living in his household. See Solman v. Shapiro, 300 F.Supp. 409, 414 (D.Conn.1969), aff'd, 396 U.S. 5, 90 S. Ct. 25, 24 L.Ed.2d 5 (1969), where it was noted:

"Connecticut does not have a state law of general applicability imposing an obligation on a stepfather to support his minor stepchildren. Ladd v. Welfare Comm'r, 3 Conn.Cir. 504, 507 n. 5, 217 A.2d 490 n. 5 (1965). See Conn.Gen.Stats. § 17–320."

That holding is elaborated in *Ladd, supra*:

"At common law, a stepparent is under no obligation to support his stepchildren. If, however, he has assumed the parental relation, acting *in loco parentis*, and holds them out to the world as members of his own family, he may incur the same liability for their support as if they were his own children; and statutes may impose a duty upon a stepparent to support his stepchildren. 67 C.J.S. Parent and Child § 80. There is no such statute in Connecticut."

It has also been held that although "a guardian is not bound to support his ward out of his own estate and is not liable to an action in his personal capacity . . . a guardian duly appointed is *in loco parentis*[5] and is entitled to the custody of his ward." Macready v. Wilcox, 33 Conn. 321, 328 (1866). Thus it is clear that Jayne Marie's dependency upon the plaintiff for support has no less of a legal basis than that of a stepchild for support from his stepfather. Indeed, unlike a guardian, a stepfather does not have any right to custody of his stepchild. The consequences of this comparison show that the exclusion of any child living in the family and dependent on its bread winner for support is not based on any substantive standard established pursuant to a general policy.

From the standpoint of practical administration of the statute, it would seem no more difficult to determine whether a child lives "in the same household with such individual" and is "being wholly or mainly supported by such individual and [is] under eighteen years of age" as the statute requires, whether the child is adopted, a ward, a

---

5. The status of *in loco parentis* arises where the foster parent assumes "the obligations incident to the parental relation without going through the formalities necessary to legal adoption." Niewiadomski v. United States, 159 F.2d 683, 686 (6th Cir. 1947). See also, Helfgott v. United States, 250 F.2d 818 (2d Cir. 1958); Leyerly v. United States, 162 F.2d 79, 85–86 (10th Cir. 1947).

stepchild, or the natural child of the eligible unemployed worker. Although there is no clue to their thinking, it may be conceivable that the legislators had in mind the advisability of encouraging stepfathers to support their stepchildren despite the absence of any legal obligation upon them to do so. However, it would be no less advisable to encourage guardians of minor children to support them since they too are under no legal obligation to do so. In either case, without the additional allowance of $5.00 per week those *in loco parentis* to children would be more likely to resort to the state welfare system for AFDC benefits. This would run counter to the long-run objectives of the welfare program which are to encourage all persons to become self-supporting. Until now Mr. Vaccarella has assumed the burden of providing the extra $5.00 per week to support Jayne Marie during the period over which he has been entitled to unemployment compensation benefits. It is ironical to assume that the legislature would want to encourage rather than discourage persons with a high sense of responsibility for the upbringing of children within their family to enter them on the public welfare rolls. Furthermore, exclusion of benefits for children in the status of Jayne Marie is in conflict with budgetary priorities. Obviously, the payment of $5.00 per week out of employer contributions for the limited period during which unemployment compensation benefits are payable is a far more satisfactory fiscal arrangement for the state to undertake than for it to furnish shelter, food, clothing and other needs of a child year in and year out under its welfare program.

### IV.

The state defends the distinction on the ground that "the legislature had to draw a line somewhere among the various persons who happen to reside with and be a claimant for unemployment compensation benefits." It is not surprising that this is the only justification advanced because, apart from that explanation, there does not appear to be "any state of facts which may be reasonably conceived to justify" the failure to include allowances for support of children in the status of Jayne Marie. McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). There is no legislative history whatever to cast any light on the legislature's intent.[6] It would be doing rather less than justice to the legislature if one were to suppose that the failure to include an allowance to eligible individuals for children *in loco parentis* represents a deliberate omission.

Ordinarily, equal protection is applied to what a state does, not to what it refrains from doing. *Cf.* Katzenbach v. Morgan, 384 U.S. 641, 657, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966). Where the state's purpose is affirmative, a criticism that it does not go far enough is subject to a "less rigorous standard of review." See Russell v. Hodges, 470 F.2d 212, 219 (2d Cir. 1972). Even so, by so narrowly defining a child for whom an additional allowance is made as not to include wards of guardians whose status to them is *in loco parentis*, the plaintiff has not been given that kind of equal treatment which is required to meet the standard of the equal protection clause. New Jersey Welfare Rights v. Cahill, 411 U.S. 619, 93 S.Ct. 1700, 36 L.Ed. 543 (1973). *Cf.* Doe v. Norton, 356 F.Supp. 202 (D. Conn.1973). As we have shown, the exclusion of an allowance for such children who are identical in all relevant respects to those for whom an allowance is granted does not further any legitimate governmental interest and therefore con-

---

6. The cursory denial of the claim by the defendant deprives the rule that weight will be given to the interpretation of a statute by the agency charged with its administration, *cf.* Mazer v. Stein, 347 U.S. 201, 211–213, 74 S.Ct. 460, 98 L.Ed. 630 (1954), of any force, and we place no reliance on it. *Cf.* DeSylva v. Ballentine, 351 U.S. 570, 577–578, 76 S.Ct. 974, 100 L.Ed. 1415 (1956).

stitutes an invidious discrimination under the most lenient standard of review.

## V.

But cogent as the argument of the plaintiff is that the statute fails to afford him equal treatment although he is similarly situated, it does not necessarily follow that he is entitled to the relief he seeks. The ·plaintiff does not complain that the statute creates a classification which imposes a burden upon him. Rather his contention is that because the statute is not drawn so as to include an allowance for him on behalf of Jayne Marie he is, in effect, being classified and being discriminated against. What we really have here then is a case of under-inclusion rather than a burden on a classification created by the statute.

If, instead of stopping short of including allowances for children in Jayne Marie's situation the statute had expressly excluded them by definition, the classification created by the definitional exclusion could be stricken so as to remove the burden created by such a classification. See, e. g., United States Dept. of Agriculture v. Moreno, *supra.*

Under that kind of a statutory scheme benefits to others now conferred by the statute would continue to be available. Nevertheless, equal protection of the laws is not achieved through indiscriminate imposition of inequalities. And because a statute is so drafted as not to include benefits for others who cannot be rationally differentiated from those who do receive them, the court ought not be stultified by lack of power to fashion an appropriate remedy. Indeed, there is a method available to achieve relief from an invidious imposition of inequalities in this situation.

"Where a statute is defective because of under inclusion there exist two re-medial alternatives: a court may either declare it a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by exclusion. *Cf.* Skinner v. Oklahoma, 316 U.S. 535 [62 S.Ct. 1110, 86 L.Ed. 1655] (1942); Iowa-Des Moines National Bank v. Bennett, 284 U.S. 239 [52 S.Ct. 133, 76 L.Ed. 265] (1931)." Welsh v. United States, 398 U.S. 333, 361, 90 S.Ct. 1792, 1807, 26 L.Ed.2d 308 (1970) (Mr. Justice Harlan concurring in the result).

See also, Moritz v. Commissioner, 469 F.2d 466 (10th Cir. 1972); *cf.* Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973).[7] Even if it were permissible as a technical matter to invalidate the entire statute, that would bring about a result which no one seeks. *Cf.* Des Moines National Bank v. Bennett, *supra.*

Without in any way impairing the legislative purposes of the statute the extension of its benefits to the plaintiff who is aggrieved by its under inclusion may be neatly accomplished by a less narrow interpretation of the word "children" in the statute. Accordingly, we declare that the word "children" in Conn.Gen.Stats. § 31–234 includes those to whom the statute's eligible individual stand *in loco parentis.*

## VI.

The defendants are enjoined from denying a dependency allowance to the plaintiff, Anthony F. Vaccarella, for his sister Jayne Marie on the ground that she is neither his child nor stepchild.

This opinion serves as the court's finding of facts and conclusion of law under F.R.Civ.P. 52(a).

---

**7.** In *Perez,* the Court held that:
"once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother. For a State to do so is 'illogical and unjust.' Weber v. Aetna Casualty & Surety Co., 406 U.S. 164 at 175 [92 S.Ct. 1400, 31 L.Ed.2d 768]."