Nancy **EVERHART, a/k/a Anna Everhart and William Everhart, Individually and on behalf of all others similarly situated**

v.

**John Albert KNEBEL, Individually and in his official capacity as Secretary of the U. S. Department of Agriculture, et al.**

Civ. No. H–76–392.

United States District Court, D. Connecticut.

Dec. 20, 1976.

James C. Sturdevant, Tolland-Windham Legal Assistance Program, Inc., Rockville, Conn., Joan E. Pilver, Legal Aid Society of Hartford, Hartford, Conn., Helen Ward, Food Emergency Action Program, Fairfield County Legal Services, Inc., Bridgeport, Conn., for plaintiffs.

Peter C. Dorsey, U. S. Atty., Frank H. Santoro, Asst. U. S. Atty., New Haven, Conn., for defendants.

## RULING ON MOTION FOR PRELIMINARY INJUNCTION

BLUMENFELD, District Judge.

The plaintiffs, Nancy Everhart, 53 years old, and her husband, William Everhart, 50 years old, are severely handicapped persons who have suffered from cerebral palsy since birth. They have been certified as eligible to participate in the Federal Food Stamp Program, 7 U.S.C. § 2011, *et seq.* They are also eligible to take part in the "Meals-on-Wheels" program operated by the Manchester Homemaker Service, Inc., a nonprofit agency which delivers meals to the homes of disabled persons. However, the plaintiffs are not able to utilize their food stamps to purchase the "Meals-on-Wheels" service solely because they are not "elderly" as required by 7 U.S.C. § 2019(h). In this action, they claim that this limitation on the use of their food stamps violates their fifth and fourteenth amendment right to equal protection of the law.

At this stage of the litigation, the plaintiffs seek a preliminary injunction enjoining the defendants from preventing the use of their food stamps to purchase the "Meals-on-Wheels" service. The defendants are the Secretary of the United States Department of Agriculture ("U.S.D.A."), the Director of the Food Stamp Program for the State of Connecticut Department of Social Services and the Commissioner of the Connecticut State Department of Social Services. Jurisdiction lies in this court pursuant to 28 U.S.C. § 1337 and 1343(3).

## I. *The Facts*

The parties have stipulated to the following facts. Plaintiffs' sole sources of income are the Supplemental Security Income and Supplemental Payments from the State of Connecticut Department of Social Services. They receive approximately $286 a month. Based upon their level of income, plaintiffs have been certified as a household eligible to participate in the Federal Food Stamp Program, 7 U.S.C. §§ 2012(e), 2014, and are authorized to purchase $92 in food coupons in exchange for $50 in cash.[1]

"Meals-on-Wheels" is a community-based service which delivers properly planned nutritional meals to persons like the plaintiffs, who as a result of handicaps are unable to purchase and prepare meals at home, or can only do so with great difficulty. The program run by the Manchester Homemaker Service, Inc. provides two meals a day, five days a week, to 25 persons in Manchester. The program charges $17.50 per week to each person who receives this service. On July 28, 1976, pursuant to 7 U.S.C. § 2019(h) and 7 C.F.R. § 272.1, the Manchester Homemaker Service, Inc. was certified by the Federal Nutritional Service of the United

---

1. Food stamps are coupons issued in small monetary denominations to be used as a medium of exchange for food in retail stores. 7 U.S.C. § 2012(f); § 2015. Food stamps are purchased for cash by eligible "households" at amounts less than their face value; the charges are determined on the basis of family income after allowable deductions. 7 U.S.C. § 2016. The cost of the program is borne wholly by the federal government with the exception of administrative costs, a portion of which are borne by the state. 7 U.S.C. §§ 2013(a), 2024(b).

Connecticut has chosen to participate in the Food Stamp Program and state statutes authorize the Department of Social Services to administer the program in the state, Conn.Gen. Stat. § 17–12a. This provision recognizes that the state agency must comply with the Food Stamp act and regulations issued thereunder, 7 U.S.C. § 2019 and 7 C.F.R. §§ 270.3, 271.1 *et. seq.*

States Department of Agriculture to redeem food stamps from eligible households for "Meals-on-Wheels."

Title 7, U.S.C. § 2019(h) permits "members of an eligible household who are sixty years of age or over or an elderly [2] person and his spouse" to use food stamps to purchase "Meals-on-Wheels" provided that such persons are "housebound, feeble, physically handicapped, or otherwise disabled, to the extent that they are unable to adequately prepare all of their meals." [3] In accordance with this provision, the Secretary of U.S.D.A. has promulgated a regulation, 7 C.F.R. § 271.3(a)(2), which requires that food stamp recipients who desire to use their food stamps in exchange for the cost of a certified "Meals-on-Wheels" program must be over 60 years of age and handicapped.[4] Because of these requirements, the plaintiffs, who are under 60 years of age, are unable to use their food stamps to purchase "Meals-on-Wheels." This is so despite the fact that their disabilities make them eligible for "Meals-on-Wheels" and their low level of income entitles them to receive food stamps.

## II. The Propriety of Preliminary Injunctive Relief

At this time, the plaintiffs are seeking a preliminary injunction, Fed.R.Civ.P. 65(a), enjoining the defendants from preventing the use of their food stamps to purchase the "Meals-on-Wheels" service. The well-established test of the Second Circuit is that a preliminary injunction will issue

> "only upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief."

**2.** Title 7, U.S.C. § 2012(e) requires an eligible household to have "cooking facilities." However, § 2012(*l*) defines an "elderly person" as "a person sixty years of age or over who is not a resident of an institution or boarding house, and who is living alone, or with spouse, *whether or not he has cooking facilities in his home.*" (Emphasis added). Section 2012(e)(2) makes an elderly person who meets the requirements of § 2019(h) an eligible household to receive food stamps.

**3.** 7 U.S.C. § 2019(h) provides in full:
"Subject to such terms and conditions as may be prescribed by the Secretary in the regulations issued pursuant to this chapter, members of an eligible household who are sixty years of age or over or an elderly person and his spouse may use coupons issued to them to purchase meals prepared for and delivered to them by a political subdivision or by a private nonprofit organization which: (1) is not receiving federally donated foods from the United States Department of Agriculture for use in the preparation of such meals; (2) is operated in a manner consistent with the purposes of this chapter; and (3) is recognized as a tax exempt organization by the Internal Revenue Service: *Provided,* That household members or elderly persons to whom meals are delivered are housebound, feeble, physically handicapped, or otherwise disabled, to the extent that they are unable to adequately prepare all of their meals. Meals served pursuant to this subsection shall be deemed 'food' for the purposes of this chapter. Subject to such terms and conditions as may be prescribed by the Secretary, in the regulations issued pursuant to this chapter, members of an eligible household who are sixty years of age or over or elderly persons and their spouses may also use coupons issued to them to purchase meals prepared by senior citizens' centers, apartment buildings occupied primarily by elderly persons, any public or nonprofit private school which prepares meals especially for elderly persons, any public or nonprofit private eating establishment which prepares meals especially for elderly persons during special hours, and any other public or nonprofit private establishment approved for such purpose by the Secretary. When an appropriate State or local agency contracts with a private establishment to offer, at concessional prices, meals prepared especially for elderly persons during regular or special hours, the Secretary shall permit members of eligible households who are sixty years of age or over or elderly persons and their spouses to use coupons issued to them to purchase such meals."

**4.** Pursuant to 7 U.S.C. § 2019(h) the Secretary of U.S.D.A. has promulgated a regulation, 7 C.F.R. § 272.1(c), which prohibits nonprofit meal delivery services from accepting food coupons in payment for meals provided to any person or household who is not eligible under 7 C.F.R. § 271.3(a)(2).

*Sonesta Int'l Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973); *Triebwasser and Katz v. American Tel. and Tel. Co.,* 535 F.2d 1356, 1358 (2d Cir. 1976). It is the second test that is applicable to the present case.

## A. The Seriousness of the Questions on the Merits

 Title 2, U.S.C. § 2019(h) establishes a classification between those food stamp recipients who are over 60 years of age and are "housebound, feeble, physically handicapped, or otherwise disabled, to the extent that they are unable to adequately prepare all of their meals," and those with identical disabilities who are under 60 years of age. The plaintiffs' ultimate contention is that this classification violates their right to equal protection of the law.[5] Their claim challenges the under-inclusiveness of a statutory benefit, rather than the creation of an unequal burden by a statutory classification. *Cf. Vaccarella v. Fusari,* 365 F.Supp. 1164, 1170 (D.Conn.1973). Under these circumstances, the appropriate equal protection standard is whether "the classification itself is rationally related to a legitimate governmental interest." *United States Department of Agriculture v. Moreno,* 413 U.S. 528, 533, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973).[6] This test necessitates a study of the legislative purposes underlying the Food Stamp Act generally and 7 U.S.C. § 2019(h) specifically.

 Although a federal statute is "entitled to a strong presumption of constitutionality," *Mathews v. de Castro,* —— U.S.

——, ——, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976), there is a "serious question" whether the legislative purposes of the Federal Food Stamp Act in general and § 2019(h) in particular are rationally advanced by the classification at issue. The dual purposes of the Food Stamp Act are set forth in the Congressional "declaration of policy."

"It is hereby declared to be the policy of Congress . . . to safeguard the health and well-being of the Nation's population and raise levels of nutrition among low-income households. The Congress hereby finds that the limited food purchasing power of low-income households contributes to hunger and malnutrition among members of such households. The Congress further finds that increased utilization of food in establishing and maintaining adequate national levels of nutrition will promote the distribution in a beneficial manner of our agricultural abundances and will strengthen our agricultural economy, as well as result in more orderly marketing and distribution of food. To alleviate such hunger and malnutrition, a food stamp program is herein authorized which will permit low-income households to purchase a nutritionally adequate diet through normal channels of trade."

7 U.S.C. § 2011. The purpose of "safeguard[ing] the health and well-being of the Nation's population and rais[ing] levels of nutrition among low-income households" is surely not served by denying persons who are disabled "to the extent that they are unable to adequately prepare their own

---

5. " '[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is "so unjustifiable as to be violative of due process." ' *Schneider v. Rusk,* 377 U.S. 163, 168, 84 S.Ct. 1187, 1190, 12 L.Ed.2d 218 (1964) . . . ." *United States Department of Agriculture v. Moreno,* 413 U.S. 528, 533 n. 5, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973). *See, Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). The test under the fifth amendment is similar, if not identical, to that under traditional equal protection analysis. *United States Department of Agriculture v. Moreno, supra.*

Because the program is administered by the state, the plaintiffs also claim a violation of the equal protection clause of the fourteenth amendment. They also challenge the regulations promulgated pursuant to § 2019(h). However, these regulations track the statute, and hence the crux of the challenge is to the statute.

6. The plaintiffs do not and could not claim they are entitled to a more stringent standard of review. Age does not invoke that higher level of scrutiny. *Mass. Bd. of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976).

meals" from using their food stamps to purchase "Meals-on-Wheels." Nor is it at all clear how the agricultural economy is furthered by denying these persons the use of their food stamps to purchase "Meals-on-Wheels." Indeed, the statute itself defines meals served by these certified programs as "food" for purposes of the Food Stamp Act. Thus, there is nothing in the general policies of the Act which supports the classification of § 2019(h).

The legislative history of § 2019(h) itself is rather sparse. The provision was added to the Food Stamp Act in 1971, P.L. 671. The House Report for that Act explains the purposes of § 2019(h) as follows:

"The new subsection represents a significant expansion of the program. By authorizing persons 60 years of age or older, who are participating in the program, to use stamps to purchase meals prepared by and delivered to them by either a political subdivision or nonprofit organization the *program seeks to reach*

*the ill and incapacitated in a manner which was heretofore not authorized.* The preparing organizations must be tax exempt, operate within the spirit of the Act and cannot utilize federally donated foods."

H.R. No. 91–1402; 3 U.S.Code Cong. and Admin.News 1970 at pp. 6025, 6040. (Emphasis added). Thus, the primary purpose of the provision was to insure a nutritionally adequate diet for the ill and incapacitated.[7] Nothing in this legislative history provides a rational basis for distinguishing ill and incapacitated persons over 60 from those under 60.[8]

Finally, it must be noted that it is undisputed that permitting the plaintiffs to use their food stamps for "Meals-on-Wheels" will not cost either the federal government or the state government any money, for the amount of food stamps the plaintiffs receive will not be increased. *Cf. Mathews v. de Castro, supra* at —— U.S. at ——, 97 S.Ct. at 434.

Thus, the age classification utilized with respect to this aspect of the provision is not to be equated with the age classification involved in *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Age alone may be a limiting condition for active work as a uniformed police officer, but it adds no magical gloss to physical disability. Because the statute requires that an individual be over 60 *and* disabled, the age provision cannot be viewed as a legislative prediction that persons over 60 are more likely to be disabled. (Such an approach would be rational on the basis of reasoning similar to that in *Murgia, supra* at 314–327, 96 S.Ct. 2567–2573). Rather, the statute is concerned with defining persons who are homebound and disabled to the extent that they cannot adequately prepare their meals. The addition of the age requirement to the statutory requirement of disability is not rational, for people under 60 who meet the disability requirement are identically situated to disabled persons over 60.

7. This conclusion is supported by statements made in the Senate. For example, upon introducing the provision, Senator Scott stated:
"Congress, in approving the Food Stamp Act of 1964, intended to help older citizens with meager incomes to buy more and better food. Under the present law, however, persons who otherwise meet age, residency, and income requirements are still not eligible for food stamps if they do not have cooking facilities in their households. If a physical incapacity or chronic illness make it impossible for persons to shop or prepare food, and if they have no one to do these things for them, these persons, too, are in effect denied the use of the food stamps. I see no reason why these citizens, who are often among the most isolated and needy in the community, should be denied the benefits which the Food Stamp Act was enacted to provide."
115 Cong.Rec. 16903 (1969).

8. The legislative history suggests that the Congress was concerned with insuring that elderly persons have nutritionally adequate diets. It is for this reason that the requirement of "cooking facilities" was eliminated as a prerequisite for eligibility for persons over 60. 7 U.S.C. § 2012(*l*). The elderly were also permitted to use food stamps at various community facilities, § 2019(h).
However, with respect to using food stamps for "Meals-on-Wheels," the Congress did not allow all persons over 60 to do so, only those which were homebound or severely disabled.

It should also be noted that Senators McGovern and Dole introduced a bill, S.2451, in the last session of Congress, Section 12 of which would have eliminated this age restriction of 7 U.S.C. § 2019(h). Congress failed to reach a vote on the bill before the end of the session. However, the entire Senate Select Committee on Nutrition and Human Needs also introduced a bill, S.3136, Sec. 7(f), which would also provide for the elimination of the age restriction.

In dealing with challenges to the under-inclusiveness of a statutory benefit, the Supreme Court has recognized that:

"[The legislature] 'may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. . . . The legislature may select one phase of one field and apply a remedy there, neglecting the others. . . .' *Williamson v. Lee Optical Co.,* 384 U.S. 483, 489 [75 S.Ct. 461, 465, 99 L.Ed. 563] (1955); *Jefferson v. Hackney,* 406 U.S. 535 [92 S.Ct. 1724, 32 L.Ed.2d 285] (1972). Particularly with respect to social welfare programs, *so long as the line drawn by the [legislature] is rationally supportable,* the courts will not interpose their judgment as to the appropriate stopping point."

*Geduldig v. Aiello,* 417 U.S. 484, 495, 94 S.Ct. 2485, 2491, 41 L.Ed.2d 256 (1975). (Emphasis added). I am mindful that this standard is easily satisfied; yet, it "is not a toothless one." *Mathews v. de Castro, supra* at ——, 97 S.Ct. at 434, *quoting Mathews v. Lucas,* 427 U.S. 495, 510, 96 S.Ct. 2755, 2764, 49 L.Ed.2d 651 (1976). Nothing in the legislative history "articulates" a rational basis for the classification. *Cf. McGinnis v. Royster,* 410 U.S. 263, 270, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1963). It may be that there is some explanation, but counsel have been unable to find it. Even under the former far more lenient test of invidious classification, the defendants have not been able to suggest "any state of facts [which] reasonably may be conceived to justify it."[9] *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). Therefore, I must conclude that the plaintiffs' challenge to § 2019(h) raises "sufficiently serious questions going to the merits to make them a fair ground for litigation."

B. *The Balance of Hardships*

▮ The second part of the test for issuing a preliminary injunction is whether the "balance of hardships tip[s] decidedly to-ward the party requesting the preliminary relief." To meet this requirement, the plaintiffs must demonstrate that they will suffer irreparable injury in the absence of the requested relief, *Triebwasser and Katz v. American Tel. and Tel. Co., supra* 535 F.2d at 1359.

Notwithstanding their extraordinary resourcefulness, the Everharts are finding it increasingly difficult to shop for themselves and prepare adequate meals. Nancy Everhart has suffered from cerebral palsy since birth. She has a weakness in both legs and her right arm. As a result, she has great difficulty walking and has problems coordinating her movements. She also has a weakness of the bladder which makes it hard for her to control her urine when she stands.

William Everhart has also suffered from cerebral palsy since birth. His condition is even more severe than his wife's. He is unable to coordinate his movements and has many uncontrollable, irregular motions of his arms, legs and head. Because of his difficulty in walking, he must so often crawl on his knees that they are thickly callused. His disease also has affected his speech, thus greatly hindering his ability to communicate. Furthermore, because of his constant muscle motion, Mr. Everhart burns an abnormally high number of calories. He also has difficulty swallowing; thus, it is essential that his food be properly prepared.

Due to their physical disabilities and financial limitations, the plaintiffs' ability to shop for themselves and prepare their own food is greatly impeded. They prepare meals together. Mrs. Everhart must use a wheelchair and has difficulty lifting pots and pans. She often burns herself. Mr. Everhart's uncontrollable muscle movements make it difficult and dangerous for him to use cooking utensils. The plaintiffs also find it very difficult to get to food stores. In this regard, their hardship has recently been exacerbated by the fact that

---

9. Indeed, the defendants could not even suggest a rational purpose for the provision either in their briefs or at oral argument.

a local food store has closed; the nearest food store is now two miles from their home. Moreover, the impending winter weather creates additional problems for them.

The undisputed expert testimony of Dr. William H. Baird reveals that the Everharts are barely subsisting; their ability to maintain adequate levels of nutrition is now marginal. Without the use of food stamps, the "Meals-on-Wheels" program is too costly for the plaintiffs. Under these circumstances, they have suffered and will continue to suffer irreparable injury from the defendants' refusal to allow them to use their food stamps for "Meals-on-Wheels." As Judge Friendly stated in *Studebaker Corp. v. Gittlin*, 360 F.2d 692, 698 (2d Cir. 1966):

> "A plaintiff asking for an injunction . . . is not required to show that otherwise rigor mortis will set in forthwith; all that 'irreparable injury' means in this context is that unless an injunction is granted, the plaintiff will suffer harm which cannot be repaired."

■ The balance of hardships clearly points in favor of the plaintiffs. They are seeking preliminary injunctive relief only for themselves;[10] it is undisputed that this relief will cost the federal and state defendants no money because the plaintiffs already receive food stamps and are eligible for the "Meals-on-Wheels" program; and the relief is necessary to prevent continued irreparable injury by allowing the plaintiffs to obtain adequate nutrition.

### III. *Conclusion*

The plaintiffs have met the test for issuing a preliminary injunction. Therefore, the defendants are enjoined from preventing the plaintiffs from using their food stamps to purchase "Meals-on-Wheels" pending a final resolution of constitutional validity of 7 U.S.C. § 2019(h).

SO ORDERED.

**10.** The complaint alleges a class action. However, a class action has not been certified and the preliminary injunction is sought only on behalf of the named plaintiffs.