## De SYLVA *v.* BALLENTINE, GUARDIAN.

No. 529. Argued April 25–26, 1956.—Decided June 11, 1956.

*Theodore Kiendl* argued the cause for petitioner. With him on the brief was *Pat A. McCormick* and *John H. Cleary, Jr.*

*Max Fink* argued the cause for respondent. With him on the brief was *Milton A. Rudin.*

*Solicitor General Sobeloff, Acting Assistant Attorney General Leonard, Paul A. Sweeney, Herman Marcuse* and *Abraham L. Kaminstein* filed a brief for the Register of Copyrights, as *amicus curiae.*

Briefs of *amici curiae* urging reversal were filed by *Sidney Wm. Wattenberg* for the Music Publishers' Protective Association, Inc., *Herman Finkelstein* for the American Society of Composers, Authors and Publishers, and *Morris Ebenstein,* with whom *Sidney A. Schreiber* was on the motion for leave to file the brief, for the Motion Picture Association of America, Inc.

*John Schulman* filed a brief for the Songwriters' Protective Association, as *amicus curiae,* and *Solomon A. Klein* was with him on the motion for leave to file this brief.

Opinion of the Court by MR. JUSTICE HARLAN, announced by MR. JUSTICE BURTON.

The present Copyright Act [1] provides for a second 28-year copyright after the expiration of the original 28-year term, if application for renewal is made within one year before the expiration of the original term. This right to renew the copyright appears in § 24 of the Act:

> *"And provided further,* That in the case of any other copyrighted work, . . . the author of such work, if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then the author's executors, or in the absence of a will, his next of kin shall be entitled to a renewal and extension of the copyright in such work for a further term of twenty-eight years when application

---

[1] 61 Stat. 652, 17 U. S. C. § 1 *et seq.*

for such renewal and extension shall have been made to the copyright office and duly registered therein within one year prior to the expiration of the original term of copyright . . . ."

In this case, an author who secured original copyrights on numerous musical compositions died before the time to apply for renewals arose. He was survived by his widow and one illegitimate child, who are both still living. The question this case presents is whether that child is entitled to share in the copyrights which come up for renewal during the widow's lifetime.

Respondent, the child's mother, brought this action on the child's behalf against the widow, who is the petitioner here, seeking a declaratory judgment that the child has an interest in the copyrights already renewed by the widow and those that will become renewable during her lifetime, and for an accounting of profits from such copyrights as have been already renewed. The District Court, holding that the child was within the meaning of the term "children" as used in the statute but that the renewal rights belonged *exclusively* to the widow, gave judgment for the widow. Agreeing with the District Court on the first point, the Court of Appeals reversed, holding that on the author's death *both* widow and child shared in the renewal copyrights. 226 F. 2d 623. Because of the great importance of these questions in the administration of the Copyright Act, we granted certiorari, 350 U. S. 931.

The controversy centers around the words "or the widow, widower, or children of the author, if the author be not living." Two questions are involved: (1) do the widow and children take as a class, or in order of enumeration, and (2) if they take as a class, does "children" include an illegitimate child. Strangely enough, these

questions have never before been decided, although the statutory provisions involved have been part of the Act in their present form since 1870.

## I.

The widow first contends that, after the death of the author, she alone is entitled to renew copyrights during her lifetime, exclusive of any interest in "children" of the author. That is, she interprets the clause as providing for the passing of the renewal rights, on the death of the author, first to the widow, and then only after her death to the "children" of the author. If the word "or" which follows "widower" is to be read in its normal disjunctive sense, this is not an unreasonable interpretation of the statute, which might then well be read to mean that "children" are to renew only if there is no "widow" or "widower." The statute is hardly unambiguous, however, and presents problems of interpretation not solved by literal application of words as they are "normally" used. The statute must be read as a whole, and putting each word in its proper context we are unable to say, as the widow contends we should, that the clear purport of the clause in question is the same as if it read "or the widow, or widower, if the author be not living, or the children of the author, if the author, and widow or widower, be not living."

We start with the proposition that the word "or" is often used as a careless substitute for the word "and"; that is, it is often used in phrases where "and" would express the thought with greater clarity. That trouble with the word has been with us for a long time: see, e. g., United States v. Fisk, 3 Wall. 445. In this instance, we need look no further than the very next clause in this same section of the Copyright Act for an example of this careless usage: ". . . or if such author, widow, widower

*or* children be not living, then the author's executors . . . ." If the italicized "or" in that clause is read disjunctively, then the author's executors would be entitled to renew the copyright if any *one* of the persons named "be not living." It is clear, however, that the executors do not succeed to the renewal interest unless *all* of the named persons are dead, since from the preceding clause it is at least made explicit that the "widow, widower, or children of the author" all come before the executors, after the author's death. The clause would be more accurate, therefore, were it to read "author, widow or widower, *and* children." It is argued with some force, then, that if in the succeeding clause the "or" is to be read as meaning "and" in the same word grouping as is involved in the clause in question, it should be read that way in this clause as well. If this is done, it is then an easy step to read "widow" *and* "children" as succeeding to the renewal interest as a class, as the Court of Appeals held they did.

This Court has already traced the development of the renewal term in the several copyright statutes enacted in this country. See *Fred Fisher Music Co.* v. *M. Witmark & Sons*, 318 U. S. 643, where it was held that the author, during his lifetime, could make a binding assignment of the expectancy in his future rights of renewal. The first federal statute, the Act of May 31, 1790, 1 Stat. 124, did not allow renewal by anyone except the author. In 1831, however, a new Act was passed, which for the first time gave to the author's family the right to renew after his death. Act of February 3, 1831, 4 Stat. 436. Section 2 of that Act provided:

> "That if, at the expiration of the aforesaid term of years, such author . . . be still living, and a citizen . . . of the United States, or resident therein, or being dead, shall have left a widow, or child, or

> children, either or all then living, the same exclusive right shall be continued to such author . . . , or, if dead, then to such widow *and* child, or children, for the further term of fourteen years . . . ." (Italics supplied.)

It is significant that this statute, which instituted the present scheme of allowing a copyright to be renewed after the author's death, provided for the renewal interest in the "widow *and* child, or children," rather than in the widow or children separately. Petitioner concedes that under this statute the widow and children took as a class. This statute marked a major development in this phase of copyright legislation and created a system which, in its basic form, has been continued even to the present statute.

Section 88 of the Act of July 8, 1870, 16 Stat. 212, in consolidating the language of § 2 of the 1831 Act, made one important change in the language of the renewal section: the right of renewal was given to the author's widow *or* children, rather than to the widow *and* children. The section read as follows:

> "That the author, . . . if he be still living and a citizen of the United States or resident therein, or his widow *or* children, if he be dead, shall have the same exclusive right continued for the further term of fourteen years . . . ." (Italics supplied.)

This section became § 4954 of the Revised Statutes, and was amended in 1891, 26 Stat. 1107, by deleting the requirement that the author be a citizen or resident of the United States. The section was otherwise left intact. The present renewal provision appeared first as § 23 of the Copyright Act of March 4, 1909, 35 Stat. 1080, and was continued without change in 17 U. S. C. § 24.

Knowing, as we do, that "or" can be ambiguous when used in such a context as this, it is difficult to say that

the change made in the 1870 Copyright Act had the effect of changing, as petitioner contends it did, the children's interest from an interest shared with the widow to one which became effective only after her death. There is no legislative history, either when the 1870 Act was passed or in the subsequent sessions of Congress, to indicate that Congress in fact intended to change in this respect the existing scheme of distribution of the renewal rights. Rather, what scant material there is indicates that no substantial changes in the Act were intended.[2] It would not seem unlikely that the framers of the 1870 statute, interested in compressing the somewhat cumbersome phrasing of the prior Copyright Act, simply deleted the words "and child" with the thought that the remaining phrase "or children" expressed precisely the same result, leaving unaffected the rights of the author's children which had been the same for almost forty years.

We then come to the 1909 Copyright Act. By § 23 of that Act, now 17 U. S. C. § 24, there were added to those entitled to renewal rights after the author's death—the widow or children—the author's executors, or, in the absence of a will, his next of kin. Each of these named classes is separated in the statute by a condition precedent to the passing of the renewal rights, namely, that the persons named in the preceding class be deceased. As already noted, it is at least clear that, if the author and his widow have both died, survived by a child, that child is entitled to renew copyrights maturing during his lifetime. But if this interest were to take effect only *after* the death of the widow, it might be expected that the drafters of the Act would have separated "widow or widower" from "children" with the same condition precedent used in defining the succession of the other classes to the renewal rights, since it would in effect be placing the children

---

[2] See Cong. Globe, 41st Cong., 2d Sess. 2680, 2854 (1870).

in a class lower than that occupied by the widow or widower. Granting that the absence of this structure might simply have been due to carelessness in adding the new class to the prior renewal section, we think it may nevertheless be taken as some indication that the widow and children are to take the right to renew at the same time.

The Solicitor General has filed a helpful brief on behalf of the Register of Copyrights, as *amicus curiae,* in which the administrative practice of the Copyright Office is discussed. It appears that the Regulations issued under the 1909 Act, in force until 1948 (when new Regulations, not touching on this point, were issued), allowed the children of the author to apply for copyright renewals after the author's death along with the widow or widower—that is, the children were not treated as being entitled to renewal only after the death of the widow or widower.[3] The practice of the Copyright Office has been to register renewal claims by children during the lifetime of an author's widow or widower, although this practice, it is frankly admitted, is more the result of a decision that there is substantial doubt over the question, rather than the result of a confident interpretation of the statute as treating widows, widowers, and children as members of one class. Although we would ordinarily give weight to the inter-

---

[3] 37 CFR, 1938, § 201.24 (a): "Application for the renewal of a subsisting copyright may be filed within 1 year prior to the expiration of the existing term by:

"(1) The author of the work if still living;

"(2) The widow, widower, or children of the author if the author is not living;

"(3) The author's executor, if such author, widow, widower, or children be not living;

"(4) If the author, widow, widower, and children are all dead, and the author left no will, then the next of kin."

See § 48, Copyright Office Bulletin No. 15 (1913); § 46, Copyright Office Bulletin No. 15 (1910).

pretation of an ambiguous statute by the agency charged with its administration, cf. *Mazer* v. *Stein*, 347 U. S. 201, 211–213, we think the Copyright Office's explanation of its practice deprives the practice of any force as an interpretation of the statute, and we therefore do not rely on it in this instance.

Petitioner and several of the associations which have filed *amicus* briefs point out that the "universal" interpretation of § 24 has been that children are entitled to renewal only *after* the death of the widow or widower. In light of the Copyright Office practice alone, that is obviously an overstatement. Nevertheless, had there been a long-standing consistent attitude by the specialists in this field of law, and a more adequate basis for it than exists here, we might hesitate to overturn what had come to be a generally accepted view of a statute having such important consequences. But we cannot escape the conclusion that, in this instance, any such reliance on that interpretation of the Act was misplaced: the statute is far from clear, the Copyright Office has recognized its ambiguity, renewal applications have for many years been filed by children before the death of the widow or widower, and more than one qualified commentator has either expressed doubt on the question or has concluded that the widow or widower and children take as a class.[4]

Nor is it possible for us to say, as petitioner suggests, that the only way to satisfy the congressional purpose is to hold that, during her lifetime, the widow has exclusive renewal rights. Petitioner argues that the statute, contemplating the normal situation of a widow taking care

---

[4] See, *e. g.*, Chafee, Reflections on the Law of Copyright, 45 Col. L. Rev. 503, 527; Kupferman, Renewal of Copyright—Section 23 of the Copyright Act of 1909, 44 Col. L. Rev. 712, 717; Tannenbaum, Practical Problems in Copyright, 7 Copyright Problems Analyzed (CCH) 7, 12 (1952). But see, *e. g.*, Nicholson, A Manual of Copyright Practice, 195, 196; De Wolf, An Outline of Copyright Law, 66.

of her children, gives the widow exclusive control of the copyright on the author's death, since she is presumably more capable of dealing with it and will more likely be in need of the copyright income. This branch of the argument, however, becomes very much diluted when it is observed that, if the deceased author be a woman, the statute disposes of the renewal rights in the same manner as if the author were a male. It is further argued that since the value of the copyright depends to an appreciable extent on the ability to convey clear publication rights, the statute should not be construed to diminish the value of the copyright by scattering its ownership, which might make it difficult to transfer clear title. One difficulty with this argument is that it ignores the 1831 statute, which, as petitioner recognizes, divided the ownership of the renewal rights between the surviving spouse of the author and his children. What we are asked to do is to avoid, on policy grounds, an interpretation of the successor statute which embodies the policy of the earlier Act, a policy which Congress saw fit to effectuate at least until 1870, and which, if changed then, was changed without any discernible display of dissatisfaction with that policy. This is not the type of case where we can use, as a guide to statutory interpretation, an unwillingness to attribute to Congress results which on their face are harsh, or present constitutional difficulties, or which are so extraordinary that clear, unambiguous wording is required. Cf. *United States* v. *Minker,* 350 U. S. 179. In view of this explicit prior legislation, this Court should not transfuse the successor statute with a gloss of its own choosing, especially where the choice between the alternative policies is as close as this one.[5]

---

[5] Petitioner also argues that since the statute does not specifically provide for an allocation, as between the widow or widower and children, of their respective interests in the renewal copyrights, it should not be read as providing for their succeeding to the renewal

While the matter is far from clear, we think, on balance, the more likely meaning of the statute to be that adopted by the Court of Appeals, and we hold that, on the death of the author, the widow and children of the author succeed to the right of renewal as a class, and are each entitled to share in the renewal term of the copyright.

## II.

We come, then, to the question of whether an illegitimate child is included within the term "children" as used in § 24. The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law. Cf. *Reconstruction Finance Corp.* v. *Beaver County,* 328 U. S. 204; *Board of County Commissioners* v. *United States,* 308 U. S. 343, 351–352. This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern.

If we look at the other persons who, under this section of the Copyright Act, are entitled to renew the copyright after the author's death, it is apparent that this is the general scheme of the statute. To decide who is the widow or widower of a deceased author, or who are his executors or next of kin, requires a reference to the law of the State which created those legal relationships. The word "children," although it to some extent describes a purely physical relationship, also describes a legal status not unlike the others. To determine whether a child has been legally adopted, for example, requires a reference to state law. We think it proper, therefore, to

---

rights as a class. But neither did the 1831 Act provide for a division of the copyright between widow and child or children; nor does the present Act allocate the renewal rights as between those included in the term "next of kin." The absence of such a provision, therefore, is not persuasive as an aid to interpretation of the statute.

draw on the ready-made body of state law to define the word "children" in § 24. This does not mean that a State would be entitled to use the word "children" in a way entirely strange to those familiar with its ordinary usage, but at least to the extent that there are permissible variations in the ordinary concept of "children" we deem state law controlling. Cf. *Seaboard Air Line Railway* v. *Kenney,* 240 U. S. 489.[6]

This raises two questions: first, to what State do we look, and second, given a particular State, what part of that State's law defines the relationship. The answer to the first question, in this case, is not difficult, since it appears from the record that the only State concerned is California, and both parties have argued the case on that assumption. The second question, however, is less clear. An illegitimate child who is acknowledged by his father, by a writing signed in the presence of a witness, is entitled under § 255 of the California Probate Code[7] to inherit his father's estate as well as his mother's. The District Court found that the child here was within the

---

[6] Petitioner relies on *McCool* v. *Smith,* 1 Black 459, for the proposition that a general statutory reference to "children" means only legitimate children. The actual decision in that case, decided in 1862, concerned only the interpretation of a state statute, and we do not consider it controlling here. Cf. *Hutchinson Investment Co.* v. *Caldwell,* 152 U. S. 65, 70.

[7] "Every illegitimate child is an heir of his mother, and also of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father, and inherits his or her estate, in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock; but he does not represent his father by inheriting any part of the estate of the father's kindred, either lineal or collateral, unless, before his death, his parents shall have intermarried, and his father, after such marriage, acknowledges him as his child, or adopts him into his family; in which case such child is deemed legitimate for all purposes of succession. An illegitimate child may represent his mother and may inherit any part of the estate of the mother's kindred, either lineal or collateral."

terms of that section. Under California law the child is not legitimate for all purposes, however; compliance with § 230 of the Civil Code [8] is necessary for full legitimation, and there are no allegations in the complaint sufficient to bring the child within that section. Hence, we may take it that the child is not "adopted" in the sense that he is to be regarded as a legitimate child of the author.

Considering the purposes of § 24 of the Copyright Act, we think it sufficient that the status of the child is that described by § 255 of the California Probate Code. The evident purpose of § 24 is to provide for the family of the author after his death. Since the author cannot assign his family's renewal rights, § 24 takes the form of a compulsory bequest of the copyright to the designated persons. This is really a question of the descent of property, and we think the controlling question under state law should be whether the child would be an heir of the author. It is clear that under § 255 the child is, at least to that extent, included within the term "children."

Finally, there remains the question of what are the respective rights of the widow and child in the copyright renewals, once it is accepted that they both succeed to the renewals as members of the same class. Since the parties have not argued this point, and neither court below has passed on it, we think it should not be decided at this time.

For the foregoing reasons, the judgment of the Court of Appeals is

*Affirmed.*

---

[8] "The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth. The foregoing provisions of this Chapter do not apply to such an adoption."

Mr. Justice Douglas, with whom Mr. Justice Black joins, concurring.

The meaning of the word "children" as used in § 24 of the Copyright Act is a federal question. Congress could of course give the word the meaning it has under the laws of the several States. See *Hutchinson Investment Co.* v. *Caldwell*, 152 U. S. 65, 68–69; *Poff* v. *Pennsylvania R. Co.*, 327 U. S. 399, 401. But I would think the statutory policy of protecting dependents would be better served by uniformity, rather than by the diversity which would flow from incorporating into the Act the laws of forty-eight States. Cf. *Clearfield Trust Co.* v. *United States*, 318 U. S. 363, 367; *National Metropolitan Bank* v. *United States*, 323 U. S. 454, 456; *Heiser* v. *Woodruff*, 327 U. S. 726, 732; *United States* v. *Standard Oil Co.*, 332 U. S. 301, 307.

An illegitimate child was given the benefits of the Federal Death Act by *Middleton* v. *Luckenbach S. S. Co.*, 70 F. 2d 326, 329–330, where the Court of Appeals for the Second Circuit said:

"There is no right of inheritance involved here. It is a statute that confers recovery upon dependents, not for the benefit of an estate, but for those who by our standards are legally or morally entitled to support. Humane considerations and the realization that children are such no matter what their origin alone might compel us to the construction that, under present day conditions, our social attitude warrants a construction different from that of the early English view. The purpose and object of the statute is to continue the support of dependents after a casualty. To hold that these children or the parents do not come within the terms of the act would be to defeat the purposes of the act. The benefit conferred beyond being for such beneficiaries is for

society's welfare in making provision for the support of those who might otherwise become dependent. The rule that a bastard is nullius filius applies only in cases of inheritance. Even in that situation we have made very considerable advances toward giving illegitimates the right of capacity to inherit by admitting them to possess inheritable blood."

I would take the same approach here and, regardless of state law, hold that illegitimate children were "children" within the meaning of § 24 of the Copyright Act, whether or not state law would allow them dependency benefits.

With this exception, I join in the opinion of the Court.