**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff–Appellee,**

v.

**STATE OF NEW YORK, N.Y.S. Office of Court Administration, N.Y. Administrative Board of Courts, and N.Y.S. Department of Audit and Control, Defendants–Appellants.**

Nos. 968, 969, Dockets 90–6010, 90–6012.

United States Court of Appeals, Second Circuit.

Argued Feb. 23, 1990.

Decided June 28, 1990.

---

Paul Bogas, Atty., E.E.O.C., Washington, D.C. (Charles A. Shanor, General Counsel, Gwendolyn Young Reams, Associate General Counsel, Vella M. Fink, Asst. General Counsel, E.E.O.C., Washington, D.C., of counsel), for plaintiff-appellee.

Michael Colodner, Office of Court Admin., New York City (John Eiseman, Kenneth Falk, New York City, of counsel), for defendants-appellants N.Y.S. Office of the Courts, Court Admin. and N.Y. Admin. Bd.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City (O. Peter Sherwood, Sol. Gen., Lawrence S. Kahn, Deputy Sol. Gen., Caren S. Brutten, Asst. Atty. Gen., New York City, of counsel), for defendants-appellants State of N.Y. and N.Y.S. Dept. of Audit and Control.

Before LUMBARD, MINER and MAHONEY, Circuit Judges.

MINER, Circuit Judge:

Plaintiff-appellee Equal Employment Opportunity Commission ("EEOC"), the agency of the United States government charged, inter alia, with enforcement of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (1988) ("ADEA"), brought this action to enjoin defendants-appellants from using age as a ground to deny the application of retired New York Supreme Court Justice Isaac Rubin for extension of his status as a certificated justice. Defendants-appellants are the State of New York and those of its agencies charged with enforcement of state constitutional and statutory provisions relating to the certification of judges for service after the retirement age of 70. Defendants contend that Justice Rubin, having acquired the office of justice of the supreme court initially by election, must be classified as an elected state official excluded from the coverage of the ADEA.

Proceeding to a final determination after deciding to combine a motion for preliminary injunction with a trial on the merits of the EEOC's claim, Fed.R.Civ.P. 65(a)(2), the district court "permanently enjoined defendants from using age seventy-six as an automatic cut-off point to disqualify Justice Rubin from being considered for discretionary reappointment as a certificated retired

justice." *EEOC v. State of New York*, 729 F.Supp. 266, 268 (S.D.N.Y.1990). The injunction was predicated on a finding that Justice Rubin, having been certificated for additional service after the retirement age of seventy, is an appointed, rather than an elected, official, and that the denial of further certification after the age of seventy-six is a violation of the ADEA.

For the reasons set forth below, we conclude that the district court erred in determining that Justice Rubin is not excluded from the coverage of the ADEA as a "person elected to public office," 29 U.S.C. § 630(f). We therefore reverse and direct entry of judgment for defendants-appellants.

## BACKGROUND

Conferred upon the New York Supreme Court is

> all the jurisdiction which was possessed and exercised by the supreme court of the colony of New York at any time, and by the court of chancery of England on the fourth day of July, seventeen hundred seventy-six, with the exceptions, additions and limitations created and imposed by the constitution and laws of the state.

N.Y.Jud.Law § 140–b (McKinney 1983); *see also* N.Y. Const. art. 6, § 7(a). Pre-dating the American Revolution, the New York Supreme Court is a court of original, general, unlimited, and statewide jurisdiction. N.Y.Jud.Law § 140–b; *see also* N.Y. Const. art. 6, § 7(a). For purposes of court administration, the state is divided into twelve judicial districts, each comprised of one or more counties, N.Y.Jud.Law § 140, and each assigned a fixed number of supreme court justices, *id.* § 140–a. In all, 314 justices presently are authorized by statute. *Id.* The New York legislature is empowered by the state constitution to increase the number of justices in any judicial district, the number in any district not to exceed one justice for each 50,000, or fraction over 30,000, of population. N.Y. Const. art. 6, § 6(d). The legislature also is empowered, once every ten years, to increase or decrease the number of judicial

districts or alter their composition and thereupon reapportion the number of justices in the altered districts. *Id.* § 6(b).

Despite the statewide jurisdiction of the supreme court, the justices of the court are elected in the judicial districts in which they are to serve. *Id.* § 6(c). Their terms of office are fourteen years, commencing on the first day of January following election. *Id.* The judicial districts of the state comprise four separate judicial departments, and there is an appellate division of the supreme court in each department. *Id.* § 4(a). The state constitution provides that the appellate divisions have such original and appellate jurisdiction as may be prescribed by law. *Id.* § 4(k). The presiding and associate justices in each appellate division are designated by the New York governor from the ranks of the elected justices of the supreme court. *Id.* § 4(c). The presiding justices are designated to act as such during their terms of office, and the associate justices are designated for five years or for the unexpired portions of their terms of office as supreme court justices, if less than five years. *Id.* The constitution provides for seven justices in the first and second departments and five justices in the other two departments to be designated to serve on the appellate divisions for those departments, *id.* § 4(b), and authorizes the governor to designate additional justices for service upon a certification of need. *Id.* § 4(e). Additional justices have been designated for service in each department.

The New York State Constitution provides that "[e]ach … justice of the supreme court … shall retire on the last day of December in the year in which [she or] he reaches the age of seventy." *Id.* § 25(b). Attainment of the retirement age results in the expiration of the term of the retiring justice and a new election to fill the vacancy. *See* N.Y.Jud.Law § 23; *Mountain v. Scott*, 64 N.Y.2d 714, 718, 475 N.E.2d 106, 108, 485 N.Y.S.2d 735, 737–38 (1984) (mem.). However, a retired justice may continue to perform the same judicial service as previously performed if "it shall be certificated in the manner provided by law that the services of such … justice are

necessary to expedite the business of the court and that [she or] he is mentally and physically able and competent to perform the full duties of such office." N.Y. Const. art. 6, § 25(b). A certificated justice is not counted in the fixed number of justices allocated to a judicial district, *id.*, and is, in effect, a supernumerary judicial officer.

Responsibility for certification lies with the Administrative Board of the New York Courts. N.Y.Jud.Law § 115(2). The Administrative Board is composed of the Chief Judge of the New York Court of Appeals, the state's highest court, *see* N.Y. Const. art. 6, § 3, and the presiding justices of the four appellate divisions of the supreme court. N.Y.Jud.Law § 210(2). In the case of each justice who applies for certification pursuant to Judiciary Law section 115(1), the Board must make findings of mental and physical competency and necessity before deciding whether to exercise its discretionary authority to certify, N.Y. Jud.Law § 115(2). Certification is valid for two years and may be renewed for additional terms of two years each by the Administrative Board upon further findings of mental and physical capacity and of need for the services of the justice. *Id.* However, no retired justice may serve beyond the last day of December in the year in which she or he reaches the age of seventy-six. *Id.;* N.Y. Const. art. 6, § 25(b). Those justices who were designated for service on an appellate division and were engaged in such service upon reaching the age of seventy are "eligible for designation by the governor as a temporary or additional justice of the appellate division" upon certification. N.Y. Const. art. 6, § 25(b).

Isaac Rubin was elected to the office of justice of the New York Supreme Court in the ninth judicial district for a fourteen-year term commencing January 1, 1977. Designated by the governor for service as an associate justice of the appellate division, second department, Justice Rubin began his service in that capacity on January 1, 1982. On May 9, 1983, Justice Rubin became seventy years of age and, as required by the New York State Constitution, retired on December 31, 1983. Before his retirement, he applied for and received cer-

tification for a two-year term beginning January 1, 1984 and was designated by the governor to serve on the appellate division, second department, for the same term. He was re-certificated for two additional two-year terms thereafter and was re-designated to serve on the appellate division, second department, each term. After Justice Rubin attained the age of seventy-six on May 9, 1989, he was ineligible to apply for further certification or designation, according to New York law.

In its complaint, filed on October 30, 1989, the EEOC alleged that "defendants are excluding Justice Isaac Rubin from office at age 76 because of his age in violation of Sec. 4(a) of the ADEA, 29 U.S.C. § 623(a)." The relief sought in the complaint included a permanent injunction enjoining the defendants from the employment practices complained of and "a judgment requiring Defendants to make whole Isaac Rubin and other employees mandatorily retired." On December 4, 1989, following the filing of defendants' answer, the EEOC moved for a preliminary injunction to prevent the enforcement, *pendente lite*, of such portions of the New York State Constitution and laws as would "curtail [Justice Rubin's] service at the end of 1989 because of his age." In opposing the motion, the defendants sought a consolidation of the motion hearing with a trial on the merits as provided by Federal Rule of Civil Procedure 65(a)(2). The consolidation was granted on consent, and the district court proceeded to a determination on the merits. On December 22, 1989, the district court issued a Memorandum Opinion and Order granting the injunctive relief sought by EEOC and denying a motion by defendants for a stay of the injunction. The court gave more detailed reasons for its determination in a further Opinion and Order issued on January 12, 1990. 729 F.Supp. 266.

Addressing the defendants' claim that Justice Rubin was a "person elected to public office in any State" and therefore excepted from the definition of "employee" under the ADEA, 29 U.S.C. § 630(f), the district court "declin[ed] to categorize certi-

ficated Supreme Court Justices as elected officials" in light of the statutory language and legislative history of the ADEA. 729 F.Supp. at 275. Finding that the "elected to public office" exception applies to a "person who holds his *present* office because the voters elected him to it" and not "to any person whose *voter*-elected term has ended, and who now holds office by virtue of having been selected by someone other than the voters," the district court concluded "that certificated judges should not be included in the category of 'elected' officials." *Id.* at 271. Discerning that the elected official exception was introduced into the ADEA to avoid "the absurd result" of requiring a judicial inquiry into each voter's motives and possibly depriving the electorate of its chosen representatives, *id.*, the district court observed that "[t]he electorate has no voice at all in the certification process," *id.* at 274. Accordingly, the defendants were enjoined permanently from enforcing the New York State Constitution and laws "to disqualify Justice Rubin from applying for certification as a certificated retired justice of the New York State Supreme Court, and from serving in that position if he is certificated, due solely to the fact that he has reached the age of seventy-six." *Id.* at 278.

Effective January 1, 1990, Justice Rubin began his fourth two-year term as a certificated retired justice of the New York Supreme Court, subject to the outcome of this appeal. On January 4, 1990, Governor Mario Cuomo redesignated Justice Rubin to serve as an associate justice of the appellate division, second judicial department. At the age of seventy-seven, Justice Rubin continues to serve in that capacity.

## DISCUSSION

The ADEA prohibits an employer from discriminating against an employee on the basis of age "with respect to ... compensation, terms, conditions, or privileges of employment." 29 U.S.C. § 623(a)(1). By virtue of the statutory definition of "employee," the protections of the ADEA do not extend to:

any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office.

29 U.S.C. § 630(f).

Since state judges are not mentioned specifically in the foregoing list, which includes only "elected officials and a narrowly defined group of appointees," judges have turned to the courts in an effort to determine whether they are entitled to continue their judicial services after reaching a state-prescribed retirement age. *See EEOC v. State of Vermont,* 904 F.2d 794, 801 (2d Cir.1990). Unless a state judge falls within one of the excepted categories, she or he cannot be forced to retire on account of age. Obviously, a judicial officer never can be classified as a member of the "personal staff" of an elected official or as "an immediate advisor with respect to the exercise of the constitutional or legal powers of [an] office." We recently held that an appointed state judge cannot be considered "an appointee on the policymaking level" because "the performance of traditional judicial functions is not policymaking" and because judges do not "work closely with the appointing authority" as must those actually engaged in the making of policy. *Id.* at 800. *But see Gregory v. Ashcroft,* 898 F.2d 598, 601–04 (8th Cir. 1990); *EEOC v. Massachusetts,* 858 F.2d 52, 54–57 (1st Cir.1988). Accordingly, in *EEOC v. Vermont,* "we conclude[d] that Vermont's appointed judges are employees within the meaning of the ADEA and are entitled to its protection." *Id.* at 802. *But see Apkin v. Treasurer and Receiver General,* 401 Mass. 427, 517 N.E.2d 141 (1988) (holding appointed judges not protected because state constitutional provision requiring retirement at age seventy found not preempted by ADEA).

■ In this Circuit, then, only those state judges who fall within the category

of "person elected to public office" are excepted from the protection of the ADEA. Whether a certificated justice of the New York Supreme Court is such a person is the subject of our inquiry. While it is true that a justice who reaches the age of seventy is constrained to retire, and that her or his seat then is filled by election, a certificate for a two-year extension of service can be granted only to a retired justice who first held the seat by virtue of election. Although the Administrative Board is said to have "very nearly unfettered discretion in determining whether to grant applications of former Judges for certification," *Marro v. Bartlett*, 46 N.Y.2d 674, 681, 389 N.E.2d 808, 812, 416 N.Y.S.2d 212, 217 (1979), the Board is not free to certify any retired judge of its own choosing for supreme court duties. It may certify only those justices who have reached retirement age and who previously were elected to office in the judicial district in which they will be certificated for extended service. The pool of those eligible for certification thus is derived from and limited to those who were elected to the judicial office of justice of the supreme court.

▇ Certification is not equivalent to appointment. While "appointment" ordinarily entails a selection or designation to fill a public office or position, *see* Black's Law Dictionary 91 (5th ed. 1979), certification merely allows a retired elected justice to continue to "perform the duties of a justice of the supreme court," N.Y. Const. art. 6, § 25(b). In authorizing continued service through the process of certification, the Administrative Board performs some limited functions: it must make findings of mental and physical competency; it must determine whether there is a need for the continued services of the retired justice; and it must exercise discretion as to whether or not to certify. *See* N.Y.Jud.Law § 115(2). Once certificated, however, a retired justice continues to serve by virtue of the election that made the justice eligible for certification. The extended or continued service is performed in consequence of, and by reason of, election to the office of supreme court justice. It is election that

makes the service possible, for without election there can be no certification.

In *Diamond v. Cuomo*, 70 N.Y.2d 338, 342, 514 N.E.2d 1356, 1357, 520 N.Y.S.2d 732, 733 (1987) (per curiam), *appeal dismissed*, 486 U.S. 1028, 108 S.Ct. 2008, 100 L.Ed.2d 597 (1988), the New York Court of Appeals upheld a determination by the Administrative Board that certificated "Justices hold office by reason of their election to the Supreme Court, that they are exempt from the provisions of the [ADEA], and that their tenure is limited by Judiciary Law § 115." The district court declined to follow the lead of the New York Court of Appeals and reached a different conclusion after opining that the meaning of words in a federal statute is a question of federal law to be determined independently by a federal court faced with the issue. We think that the opinion of New York's highest court is "persuasive authority" and is entitled to "great respect" under the circumstances. *See Industrial Consultants, Inc. v. H.S. Equities, Inc.*, 646 F.2d 746, 749 (2d Cir.) (and cases therein cited), *cert. denied*, 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981).

"The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law." *De Sylva v. Ballentine*, 351 U.S. 570, 580, 76 S.Ct. 974, 980, 100 L.Ed. 1415 (1956) (state law applied in finding child born out of wedlock included within the term "children" for purpose of sharing in renewal rights under federal copyright statute). Where there is no federal law dealing with a matter primarily of state concern, it is proper to draw on state law to the extent that there are "permissible variations in the ordinary concept" of a term found in the federal statute. *Id.* at 580–81, 76 S.Ct. at 979–800. Such is the case here, where the term "elected to public office" is not defined in the ADEA and the question whether it should be interpreted to include certificated justices of the New York Supreme Court is a matter primarily of state concern. Accordingly, we draw on New York law, as set down in *Diamond v. Cuomo*, as further support for our conclusion

that certificated justices are elected officials.

Recognizing that "elected" is not defined in the ADEA or discussed in its legislative history, the district court found "clues to its meaning" in a statement made by the Senator who sponsored the analogous elected official exemption provision adopted in Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e(f). According to the district court, it was the Senator's "intention to preclude federal courts from examining the voters' motivations in voting and to preclude federal courts from overriding the voters' choice of elected officials." 729 F.Supp. at 273. The court found that since "only the motives of the Administrative Board members, not those of the electorate, would be scrutinized in an inquiry whether denial of certification violated the ADEA," *id.* at 275, congressional intent would best be served if certificated justices were not categorized as elected officials. Aside from the dubious proposition that congressional intention can be ascertained on the basis of a statement by a single legislator speaking to a different statute, *see Green v. Bock Laundry Machine Co.*, — U.S. ——, 109 S.Ct. 1981, 1994, 104 L.Ed.2d 557 (1989) (Scalia, J., concurring), the analysis does not answer the question: who is an elected officer within the intendment of the ADEA? Even accepting the analysis, it would indeed be necessary to examine the motives of New York voters, who are presumed to know that the supreme court justices whom they elect to office may be certificated to serve for up to six years beyond the retirement age of seventy. To the New York electorate, the period of certification is a component of the elected term. The New York State Constitution and laws so provide.

## CONCLUSION

For the foregoing reasons, the order appealed from is reversed and the action is remanded to the district court for the entry of judgment in favor of defendants-appellants.