METROPOLITAN LIFE INS. CO.

v.

Jason Miles HAWKINS, et al.

Civil Action No. 96–2109.

United States District Court, E.D. Louisiana.

May 1, 1997.

---

**49.** *Burden*, 60 F.3d at 217.

Virginia N. Roddy, Jennifer M. Lawrence, Preaus, Roddy & Krebs, New Orleans, LA, for Metropolitan Life Ins. Co.

Eugene Peter Urbanowicz, Jr., Stephen T. Perrien, Monroe & Lemann, New Orleans, LA, for Jason Miles Hawkins, Geri Marie Hawkins.

Rudy W. Gorrell, New Orleans, LA, for Jerry M. Hawkins, III, Charlie Mae Hawkins.

## ORDER AND REASONS

BERRIGAN, District Judge.

This suit was brought by Metropolitan Life Insurance (referred to herein as "MetLife") and by the Tutor of Jason Miles Hawkins and Jerry Marie Hawkins, concerning the regulation of group life insurance provided to federal employees pursuant to the Federal Employees' Group Life Insurance Act ("FEGLIA"), 5 U.S.C. §§ 8701–16, to determine how the proceeds from a FEGLIA policy will be distributed in the event of the simultaneous deaths of the insured and the beneficiary. On January 2, 1997, trial in this matter before the Court without a jury was submitted on briefs and written evidence with the consent of all parties.

At the time of their deaths, Charlie Mae Hawkins and Jerry M. Hawkins, III (referred to as "the Insureds") were both employees of the U.S. Government and insured under the FEGLIA [1], a policy of group insurance issued by MetLife to the U.S. Government. Both Insureds died at 10:50 a.m. on September 18, 1995. The Autopsy Protocols of the Insureds indicate that they died simultaneously. Charlie died as a result of four gunshot wounds allegedly inflicted by her husband, Jerry, and her death was classified as a Homicide by the Coroner. Jerry died as the result of a single gunshot wound to the head and his death was classified as a Suicide by the Coroner. Neither Charlie nor Jerry designated a beneficiary under the FEGLIA Policy. Jason Miles Hawkins and Jerry Marie Hawkins are the minor children of Charlie and Jerry.

The terms of the FEGLIA Policy, as well as 5 U.S.C. § 8705(a), provide that the proceeds payable on account of the death of an insured shall be paid to the following person or persons surviving the beneficiary when no beneficiary has been designated by the insured or the designated beneficiary predeceases the insured:

1. To the widow or widower of the Employee;

2. If neither of the above, to the child or children of such Employee and descendants of the deceased children by representation;

3. If none of the above, to the parents of the Employee or the survivor of them;

4. If none of the above, to the duly appointed executor administrator of the estate of such Employee; or

5. If none of the above, to the other next of kin of such Employee as may be determined by the Office to be entitled under the laws of domicile of such Employee at the time of his death.

Due to the circumstances surrounding the deaths of the Insureds (they died simultaneously and had not designated beneficiaries), this Court has been asked to determine to whom the FEGLIA proceeds are payable.

## PROCEDURAL BACKGROUND

After the Insureds' deaths, MetLife received claims for the FEGLIA Policy proceeds on behalf of the minor children as well as the Succession of Jerry M. Hawkins, III and the Succession of Charlie Mae Hawkins. A dispute arose regarding the payout of the proceeds, and MetLife commenced this interpleader action and deposited into the registry of the Court the sum of $787,905.44 which represents all proceeds due under the FEGLIA Policy as a result of the deaths of the Insureds. On December 18, 1996, this Court held a pre-trial conference. At that time, counsel for all parties agreed that the action be tried on the uncontested material facts. Memorandum have been filed on behalf of all defendants and the parties have agreed to submit this matter to the court for decision on the written record.

The Tutor requests this Court to fashion a federal common law rule (based on a minority, modern Uniform Laws Annotated rule) to govern the payment of proceeds from a group insurance policy authorized by FEGLIA. They argue that FEGLIA evidences a need for nationwide legal standards because of the following:

1. Express preemption. FEGLIA expressly favors federal regulation with respect to payment of proceeds from a policy authorized by it rather that

---

**1.** 5 U.S.C. §§ 8701–16.

state regulation. Specifically, they argue that 5 U.S.C.A. § 8709(d)(1) calls for express preemption. 5 U.S.C.A. § 8709(d)(1) states:

> The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State ... which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.

2. Implied preemption. FEGLIA contemplates a uniform system of life insurance benefits for all federal employees regardless of the state in which they reside. The Tutor asserts that because the payment of insurance proceeds is based on a federal formula, the payout of benefits is the same. However, if this court does not apply a uniform rule and applies state law, the value of the insurance to the employees will vary according to different state laws.

Using these two reasons, the Tutor urges this court to apply the minority, modern simultaneous death rule which presumes that the insured is deemed to have survived the beneficiary except where clear and convincing evidence exists that the beneficiary survived the insured by 120 hours. In applying this rule to the facts of the case, the minor children would become the beneficiaries to the insurance proceeds of both their parents, since both parents, in their role as the insured, would be presumed to have survived their spousal beneficiary. The Estates which are responsible for paying creditors under Louisiana law would not be eligible to collect these proceeds.

Consistent with the position of the Tutor, MetLife claims that there is sufficient precedent to apply federal common law to the facts of this case in order to achieve a result which is fair, equitable, and consistent with the government's interest in delivering "low-cost group life insurance to federal employees" with the "utmost economy in the operation of the plan." *MetLife's Memo*, pages 3–4. MetLife further urges this court to apply principles of implied federal preemption and

principles underlying the Uniform Simultaneous Death Act of 1993 (U.S.D.A.) in order to adopt the minority, modern 120-hour rule as the federal common law standard concerning the simultaneous death issue. *Id.* Finally, MetLife submits that there is no statutory or contractual basis for an award of attorney fees to the attorney for a Succession or an award of administrator's fees to the Administrator of a Succession in an interpleader action such as this. *Id.*

MetLife echoes the same argument of implied preemption as the Tutor and cites *Ridgway v. Ridgway*, 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981) as an example where a federal life insurance policy preempted inconsistent state law. The *Ridgway* court stated:

> [The federal statute] preempts all state law that stands in its way ... It prevents the vagaries of state law from disrupting the national scheme, and guarantees a national uniformity that enhances the effectiveness of congressional policy.

454 U.S. at 61, 102 S.Ct. at 58 (citing *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 584, 99 S.Ct. 802, 805–10, 59 L.Ed.2d 1 (1979)). MetLife further uses a Fourth Circuit Court of Appeals as an example where *federal common law* was applied to bar recovery of proceeds from a federal life insurance policy where the beneficiary murdered the insured. *MetLife's Memo*, page 8. *But see, Metropolitan Life Insurance Co. v. White*, 972 F.2d 122 (5th Cir.1992) (Where a beneficiary has murdered the policy-holder, both state law and federal common law would yield the same result. Thus, the Fifth Circuit concluded that application of state law was warranted).

MetLife's strongest argument for federal preemption is national uniformity. "Absent displacement of state law with respect to simultaneous deaths, the FEGLIA Program would be required to determine, in each instance, the import of each state's simultaneous death law." *MetLife's Memo*, page 9.

The Administrator of the Estates of Jerry Hawkins, III, and Charlie Mae Hawkins (referred to herein as "the Estate"), cites La. R.S. 22:645 as the appropriate authority. La. R.S. 22:645 states:

Where the individual insured and the beneficiary designated in a life insurance policy or policy insuring against accidental death have died and there is not sufficient evidence that they have died otherwise than simultaneously, the proceeds of the policy shall be distributed as if the insured had survived the beneficiary, unless otherwise expressly provided in the policy.

Thus, the Estate urges application of Louisiana law. Alternatively, the Estate argues that FEGLIA's express language warrants payment of insurance proceeds to the widow or widower's estate. Since FEGLIA designates payments to "the widow or widower of the Employee," the Estate submits that this class of beneficiaries is exclusive to all others. As an additional note, the Estate recognizes that "... a beneficiary who has wrongfully caused the death of the insured forfeits his rights to the insurance proceeds ..." and that "a conviction for murder or reckless homicide is not necessary to invoke the above principle." *Answer*, ¶ 22.

ANALYSIS:

Federal Preemption

 The Supremacy Clause of Article VI of the Constitution states:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

Notwithstanding federal supremacy in certain enumerated areas, American federalism preserves as much power to the States as possible. In each case federal authority is presumed to be exercised in a way that does not disable the States' authority. In the interpretation of a government insurance contract, the federal government should act pursuant to its power to provide benefits for federal employees, and the States should act pursuant to their traditional police power to regulate domestic matters affecting their citizens.

In this case, the terms of the FEGLIA Policy, as well as 5 U.S.C. § 8705(a), provide that the proceeds payable on account of the death of an insured shall be paid to the following person or persons surviving the beneficiary when no beneficiary has been designated by the insured or the designated beneficiary predeceases the insured:

1. To the widow or widower of the Employee;

2. If neither of the above, to the child or children of such Employee and descendants of the deceased children by representation;

3. If none of the above, to the parents of the Employee or the survivor of them;

4. If none of the above, to the duly appointed executor administrator of the estate of such Employee; or

5. If none of the above, to the other next of kin of such Employee as may be determined by the Office to be entitled under the laws of domicile of such Employee at the time of his death.

Thus, Congress has explicitly identified a list of family members who may collect the insurance proceeds in the absence of a designated beneficiary. In addition, Congress has enacted 5 U.S.C.A. § 8709(d)(1) which mandates that the "payments with respect to benefits" of federal life insurance policies shall supersede and preempt inconsistent state law.[2]

Since neither FEGLIA nor the policy define the terms "widow" and "widower," this court has been asked to determine whether these terms encompass the estates of the "widow" or "widower" as defined by state law or whether these terms are limited to a surviving beneficiary who is either living at the time of the insured's death or surviving 120 hours after the insured's death under

2. Specifically the statute states:

The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State ... which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.

5 U.S.C.A. § 8709(d)(1)

application of the Uniform Simultaneous Death Act of 1993.

In *Metropolitan Life Insurance Co. v. White*, 972 F.2d 122 (5th Cir.1992), a life insurer brought a declaratory action to determine the proper FEGLIA beneficiary after the insured was murdered by her husband. The district court used a Fifth Circuit decision which held that in the absence of a policy or a FEGLIA definition, the term "widow" means "lawful widow" as defined by state law. *Id.* (citing *Spearman v. Spearman*, 482 F.2d 1203 (5th Cir.1973) (state law determined who was the "lawful widow" where two wives claimed widow status with regard to a FEGLIA policy); *see also Metropolitan Life Insurance Co. v. Rupe*, 908 F.2d 977 (9th Cir.1990), cert. denied, 498 U.S. 1050, 111 S.Ct. 762, 112 L.Ed.2d 781 (1991) (citing *Spearman* and holding that California law prohibiting a murderer from collecting as a life insurance beneficiary applies to a FEGLIA policy); *Metropolitan Life Insurance Co. v. Manning*, 568 F.2d 922 (2d Cir.1977) (state law definition of "marriage" applies to a FEGLIA claim)). Thus, the district court considered Article 21.23 of the Texas Insurance Code[3] and the Texas Probate Code[4] which disqualifies one who is convicted and sentenced for willfully bringing about the death of an insured from collecting life insurance proceeds as a beneficiary. The district court held, therefore, that the husband's claim to the life insurance was forfeited.

The husband contended that Texas law could not be used to disqualify him from a federal statutory right granted in the FEGLIA. In reviewing the lower court's decision, the Fifth Circuit explained that *Spearman* holds that the FEGLIA should be interpreted consistent with state terms defining domestic relations and cited *De Sylva v. Ballentine*, 351 U.S. 570, 580, 76 S.Ct. 974, 979–80, 100 L.Ed. 1415 (1956) (applying the state definition of "children" to federal copyright law). The Fifth Circuit reiterated the *De Sylva* Court's explanation:

The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law. This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern.

*Metropolitan Life*, 972 F.2d at 124 (quoting *De Sylva*, 351 U.S. at 580, 76 S.Ct. at 979–80). Additionally, the Fifth Circuit considered the Seventh Circuit's test for incorporation of a state law into the FEGLIA. *Metropolitan Life*, 972 F.2d at 124; *Rollins v. Metropolitan Life Ins. Co.*, 863 F.2d 1346 (7th Cir.1988) (citing *United States v. Standard Oil Co.*, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947)). This test requires a court to balance the need for uniform national law to achieve a federal statutory purpose and the state's interest in the resolution of a particular case. *Id.* Applying this test, the Fifth Circuit held that "even if the homicide forfeiture rule [under Texas law] were not the type of state domestic relations law that supplements the FEGLIA, that would not be dispositive herein, however, because the federal common law provides the same bar to recovery of life insurance proceeds by the murderer of the insured." *Metropolitan Life*, 972 F.2d at 124. Thus, the Fifth Circuit did not choose between application of state law or federal common law to this issue because they both yielded the same result.

Similar to Texas law, Louisiana Revised Statute 22:613 does not allow a beneficiary who is judicially determined to have participated in the intentional, unjustified killing of the individual insured to collect any benefits from the insurer. Additionally, La. C.C. Art. 966 sets forth the following standard for declaring an heir unworthy: "[t]hose who have been convicted of a crime involving the intentional killing or attempted killing of the deceased, or, if not convicted, who are judicially determined to have participated in the intentional, unjustified killing or

---

3. Article 21.23 of the Texas Insurance Code mandates that "the interest of a beneficiary in a life insurance policy ... shall be forfeited when the beneficiary is the principal or an accomplice in willfully bringing about the death of the insured." TEX.INS.CODE art. 21.23 (Vernon Supp.1992).

4. TEX.PROB.CODE § 41(d) (Vernon 1980).

attempted killing of the deceased." *See also California–Western States Life Insurance Co. v. Sanford,* 515 F.Supp. 524 (E.D.La. 1981) (holding that under Louisiana law, it is not necessary that the beneficiary of an insurance policy be convicted of the felonious and intentional homicide of the insured before he is disqualified to receive the proceeds). Consequently, Jerry Miles Hawkins (the husband who murdered his wife) is barred through application of Louisiana law or through application of federal common law from recovery of life insurance proceeds as the widower of Charlie Mae Hawkins. *See Metropolitan Life,* 972 F.2d at 122. Thus, Charlie's life insurance proceeds must be distributed according to the next beneficiaries (her minor children) designated under FEGLIA. Regarding the distribution of Jerry Miles Hawkins' life insurance proceeds, MetLife and the Tutor advocate application of the Uniform Simultaneous Death Act;[5] however, this court construes the Uniform Simultaneous Death Act of 1993 "to make uniform the law with respect to the subject of this [Act] among states enacting it." Uniform Simultaneous Death Act, § 8, 8B U.L.A. 253, 258 (1993 & Supp.) (emphasis added). Given this purpose, the creation of a federal common law rule would exceed the statutory authority of the Uniform Simultaneous Death Act.[6] Furthermore, this court finds that in the event of simultaneous deaths, there is no federal law concerning either domestic relations or inheritance rights. Both of these areas are primarily matters of state concern, thus Louisiana law will apply to the interpretation of the FEGLIA policy.

■ Louisiana Revised Statute 22:645 governs the payment of insurance proceeds when there are simultaneous deaths. Specifically, the statute mandates that the proceeds of the policy shall be distributed "as if the insured had survived the beneficiary, unless otherwise expressly provided in the policy." La. R.S. 22:645. Accordingly, where Jerry and Charlie died simultaneously, the proceeds of Jerry's insurance policy are payable to his children and not to the estate of his wife, since, under this statute his wife is considered to have predeceased her husband. *See Succession of Feist,* 287 So.2d 514 (La. 1973) (Where husband and wife died simultaneously in an automobile accident and there was no way to determine who in fact was the survivor, proceeds of life insurance policy, which named husband as the insured and wife as his beneficiary, were payable to the estate of the husband and not to the estate of wife, since, under La. R.S. 22:645 the wife was considered to have predeceased her husband. Under the terms of the insurance contract, the policy proceeds were payable to the insured's estate if there was no living beneficiary). Consequently, Jerry Miles Hawkins' insurance proceeds are payable to the next beneficiary assigned under the terms of the policy and FEGLIA,[7] and not to his wife's estate. FEGLIA and the policy state that if the widow can not collect, then the proceeds are payable "to the child or children of such Employee and descendants of the deceased children by representation."[8] Therefore, the children of Jerry Miles Hawkins collect their father's life insurance proceeds.

### Award of Attorneys Fees

■ The Estate asks the Court to additionally award attorney fees. This request is

---

5. The pertinent part of the Act states:

 Except as provided in Section 6, for purposes of a provision of a governing instrument that relates to an individual surviving an event, including the death of another individual, an individual who is not established by clear and convincing evidence to have survived the event by 120 hours is deemed to have predeceased the event.

6. Moreover, the Act's prefatory note explains the advantages of the rule—each individual's property passes to that individual's relatives rather than to the other individual's relatives and that double administration costs are avoided because the property does not pass from one estate to another estate. In the instant case, both insureds' relatives who would take as the beneficiaries are the same—the minor children.

7. FEGLIA and the policy list the following beneficiaries:

 1. To the widow or widower of the Employee;
 2. If neither of the above, to the child or children of such Employee and descendants of the deceased children by representation ...

 5 U.S.C. § 8705(a).

8. 5 U.S.C. § 8705(a).

inappropriate as an award for attorney's fee for services rendered in the settlement of an estate is a debt against the estate, and not against insurance proceeds. *Succession of Wells,* 24 La.Ann. 162 (1872); *Op. Atty. Gen.,* page 2498 (1940–1942). Thus, the issues of attorney fees and administrator fees are issues for the State Court in which the Succession of Jerry M. Hawkins, III and Charlie Mae Hawkins is pending.

Accordingly,

IT IS ORDERED that Charlie Mae Hawkins' insurance proceeds are payable to her children. Jerry Miles Hawkins' insurance proceeds are payable to his children as the next assigned beneficiary specified in FEGLIA. Finally, the issue of attorney fees or administrator fees is beyond the purview of this Court and should be addressed by the state court where the succession is pending. The parties shall submit a proposed judgment approved as to form within ten days.